Raymond A. JOHNSON, Petitioner,

v.

Hans WALKER, Superintendent, Auburn Correctional Facility, Respondent.

No. 97–CV–462E F.

United States District Court, W.D. New York.

Nov. 15, 1999.

288

Raymond A. Johnson, Mid–State Correctional Facility, Marcy, NY, petitioner pro se.

Frank J. Clark, Erie County District Attorney, for respondent, Steven Meyer, Assistant District Attorney, Buffalo, NY, of counsel.

## ORDER

ELFVIN, Senior District Judge.

The Honorable Leslie G. Foschio, a Magistrate Judge in this judicial district, having considered the within Petition and Response pursuant to this Court's referral under 28 U.S.C. § 636(b)(1)(B) and having on October 14, 1999 filed his Report and Recommendation concerning such and no objection thereto having been made, it is hereby

*ORDERED* that Judge Foschio's Report and Recommendation is *confirmed in its entirety* and the Petition for a writ of habeas corpus is denied and this case shall be closed.

## REPORT and RECOMMENDATION

### *JURISDICTION*

FOSCHIO, United States Magistrate Judge.

Petitioner commenced this action on June 3, 1997, requesting relief under 28 U.S.C. § 2254. On November 12, 1997, the matter was referred to the undersigned by the Hon. John T. Elfvin for report and recommendation.

### *BACKGROUND*

Petitioner, Raymond A. Johnson ("Petitioner"), was arrested on March 23, 1979 in connection with the armed robbery and murder of Elizabeth J. Hansen ("Mrs.Hansen") on March 20, 1979 in Buffalo, New York. Petitioner and his brother Gerald Johnson were jointly charged in an indictment dated April 27, 1979 with one count of Intentional Murder (N.Y.Penal Law § 125.25(1) (McKinney 1999)[1]), two counts of Felony Murder (N.Y.Penal Law § 125.25(3)), one count of Robbery in the First Degree (N.Y.Penal Law § 160.15), one count of Burglary in the First Degree (N.Y.Penal Law § 140.30), and one count of Criminal Possession of a Weapon in the Fourth Degree (N.Y.Penal Law § 265.01).

A **Huntley**[2] hearing was conducted on November 19, 1979. By order filed December 17, 1979, New York Supreme Court Justice Frederick M. Marshall denied Petitioner's motion to suppress his confession as an involuntary statement. **Wade**[3] and suppression hearings were conducted on November 20, 1979. A **Cardona**[4] hearing was held on November 20 and 21, 1979.

Petitioner was jointly tried with his brother in a jury trial commencing on January 2, 1980. Petitioner was represented at trial by Luke C. Owens, Esq., while Richard Kubiniec, Esq., represented his brother. Justice Marshall presided over the nine day trial which concluded on January 14, 1980, when both co-defendants were found guilty of murder in the second degree, felony murder.[5] On February 11, 1980, Petitioner moved to set aside the verdict pursuant to New York Criminal Procedure Law §§ 330.30 and 330.40. Justice Marshall denied that motion and proceeded to sentence Petitioner to a determinate sentence of 25 years to life.

On February 22, 1980, Petitioner, through his appellate counsel Richard L. Baumgartner, Esq., appealed his conviction to the Appellate Division, Fourth De-

---

1. Unless otherwise indicated, references to N.Y.Penal Law are to McKinney 1995).

2. In a pretrial **Huntley** hearing, the trial judge considers the voluntariness of statements made by the defendant. *People v. Huntley*, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965).

3. In a pretrial **Wade** hearing, the trial judge considers the admissibility of identification testimony. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

4. In a pretrial **Cardona** hearing, the trial judge considers the admissibility of statements made by the defendant to fellow inmates. *People v. Cardona*, 41 N.Y.2d 333, 392 N.Y.S.2d 606, 360 N.E.2d 1306, 1307 (1977).

5. Petitioner asserts that New York Supreme Court Justice Theodore S. Kasler presided over his state criminal trial. Petition, ¶ 14. However, there is no evidence in the record that anyone other than Justice Marshall presided over the trial.

partment, which unanimously affirmed the conviction on November 15, 1985. *People v. Johnson,* 115 A.D.2d 316, 496 N.Y.S.2d 177 (1985). Leave to appeal to the Court of Appeals was denied on January 2, 1986. *People v. Johnson,* 67 N.Y.2d 653, 499 N.Y.S.2d 1049, 490 N.E.2d 565 (1986).

On January 7, 1995, Petitioner moved a writ of *error coram nobis,* and also to vacate his judgment pursuant to New York Criminal Procedure Law § 440.10. That request was denied by the Appellate Division on March 17, 1995. *People v. Johnson,* 213 A.D.2d 1085, 625 N.Y.S.2d 993 (1995).

On June 3, 1997, Petitioner filed the instant petition seeking habeas relief accompanied by a request to proceed *in forma pauperis.* Petitioner challenges the constitutionality of his conviction asserting denial of his Sixth Amendment rights to confrontation and assistance of counsel.

As the petition was filed more than seven years after his direct appeal to the Appellate Division, Judge Elfvin, on June 9, 1997, ordered Petitioner to explain why his petition should not be dismissed as untimely pursuant to 28 U.S.C. § 2244(d)(1) which provides for a one year limitations period within which to petition for habeas relief. In his response, filed July 7, 1997, Petitioner attributed his late filing to confusion as to whether he or Mr. Baumgartner would be responsible for filing his habeas petition. On August 18, 1997, Judge Elfvin deemed the petition timely and Respondent was ordered to file his answer within 30 days. Accordingly, the Answer was filed on October 30, 1997, accompanied by a Memorandum of Law in support (Docket Item No. 10) ("Respon-

dent's Memorandum"). The state court records were received on October 15, 1998.

Based on the following, the petition should be DISMISSED.

## FACTS

According to a statement signed by Petitioner on March 23, 1979, on the night of March 20, 1979, Petitioner, his brother Gerald Johnson [6] and Gilbert Adams were walking around Buffalo, New York drinking beer when Adams suggested going to the housing projects located at Fillmore and Best Streets where Adams believed they could get some money. (T2, 181–82).[7] ,[8] The trio proceeded to the projects and, upon reaching them, continued walking until they noticed that the door of Apartment C, 1098 Fillmore Avenue, was ajar. (T2, 182). As they headed toward the door, an elderly woman, Mrs. Hansen, looked out and, upon spotting them, slammed the door shut and locked it. (T2, 182). Adams said, "let's go," and kicked in the door with his foot. (T2, 182). Once inside the apartment the elderly woman, who was in the bathroom and unclothed, screamed for the intruders to leave. (T2, 182). Adams went into the bathroom and started jumping on the woman, Gerald Johnson stood inside by the refrigerator and Petitioner remained outside the apartment by the front door. (T2, 182).

According to Petitioner's statement, Petitioner stuck his head into the apartment and told his brother to tell Adams to get moving. (T2, 182). Petitioner then entered the apartment and, accompanied by his brother, walked to the bathroom where they observed Mrs. Hansen lying on the floor, screaming, her head covered in blood. (T2, 182–83). Gerald Johnson said

6. Although in his statement Petitioner referred to his brother as "Jerome," according to testimony presented at trial, Gerald Johnson was also known as "Jerome" and "Boo Boo." (T2, 19, 207, 227, 249, 454).

7. "T1" references are to the page number of the first volume of the transcript of Petitioner's state criminal trial which commenced January 2, 1980. "T2" references are to the

page number of the second volume of the transcript of Petitioner's state criminal trial.

8. Copies of Petitioner's statement, which was read into the record at his criminal trial, are attached to the criminal information and submitted in a bound volume of Respondent's exhibits.

it was time to leave and Adams kicked the woman in the head. (T2, 183). She stopped screaming and became motionless. (T2, 183). The three then left the apartment through the door and walked down Best Street. (T2, 183).

Adams retrieved a rifle, wrapped in a white towel, from the yard of a house located at 759 Best Street, around the corner from 1098 Fillmore Avenue, where Petitioner's other brother, John Johnson, resided. (T2, 183). With Adams carrying the gun, the three then returned to the apartment and reentered. (T2, 183). Petitioner and his brother took the portable television while Adams went to the bathroom where the injured woman remained on the floor. (T2, 183). Adams pointed the gun at the woman who pleaded "Please, please, my head is spinning." (T2, 183). Adams then stated to Petitioner and his brother, "go ahead. I'll catch up." (T2, 183). As Petitioner and his brother carried the television out of the apartment, climbing over a fence onto Best Street, they heard a gunshot. (T2, 183). They hid the television in the yard of the house at 759 Best Street and then waited for five minutes on the porch of the house for Adams who never arrived. (T2, 183–84). Petitioner and his brother then carried the television to a house at 23 Sweeney Street where Maggie Fields lived. (T2, 184). Gerald brought the television inside the house while Petitioner remained outside on the street corner. (T2, 184). After Gerald came out of the house, he and Petitioner stopped by the Toast of the Town Bar for a beer before going home. (T2, 184).

Petitioner stated that the gun Adams retrieved from 759 Best Street belonged to his brother Gerald and neither he nor his brother Gerald were armed when they entered Mrs. Hansen's apartment although Adams was armed with a 30–30 Winchester. (T2, 184, 186). According to Petitioner, he entered Mrs. Hansen's apartment on March 20, 1979 looking for money, (T2, 187), and the television was sold to Maggie Fields for $25. (T2, 185).

Mrs. Hansen was found in her apartment dead of a single gunshot wound to her head. The position of her body indicated she was either sitting or kneeling when she was shot at close range in the forehead and had suffered blunt force trauma to her face. (T1, at 128; T2, at 380–89).

John Johnson's girlfriend, Mabel Hall, testified that upon returning to her apartment located upstairs at 759 Best Street at 10:30 P.M. on March 20, 1979, she observed Petitioner and his brother Gerald downstairs. (T2, 457–58). Gerald was calling for his other brother John to have a gun put away. (T2, 457). Mabel Hall saw the gun and her daughter found a spent shell casing which Mabel threw in the garbage. (T2, 458–59). According to Mabel, John Johnson generally kept the gun in her bedroom under the mattress. (T2, 457).

Gerald Johnson's girlfriend, Cora Lee Hall, testified that at 10:30 P.M. on March 20, 1979, Gerald brought her jewelry which was identified at trial as having belonged to Mrs. Hansen. (T2, 207–209, 217–21). Two days later, Cora Lee turned the jewelry over to the police after being advised it was stolen property and that failure to turn it over could result in charges of possession of stolen property. (T2, 210, 213).

Maggie Fields, mother of both Mabel Hall and Cora Lee Hall, testified at trial that on March 20, 1979, at 10:30 P.M., Gerald Johnson brought her a television set and asked if she would like to buy it. (T2, 228–32). Ms. Fields noticed the reception antenna was broken and mentioned to Gerald that he must have stolen it. (T2, 229). Nevertheless, Ms. Fields allowed the television to remain at her house. (T2, 230). According to Ms. Fields, some police officers arrived at her house in the evening of March 23, 1979, looking for a television. (T2, 231). Mrs. Hansen voluntarily gave them the televi-

sion that Gerald Johnson had brought her. (T2, 231).

Wesley Kopack testified at trial that in his employment as a television serviceman he installed a television in Mrs. Hansen's apartment on March 19, 1979, which was loaned to her while her own television was being repaired. (T2, 371–72). Mr. Kopack also identified the television recovered from Ms. Fields's house as the one he installed in Mrs. Hansen's apartment the day before her murder. (T2, 372–73).

Bert Cunningham testified that on March 23, 1979, he, John Johnson, Michael Sanders and someone named Avery helped Gerald Johnson move the gun from 759 Best Street to a house located at 172 Reed Street where Petitioner's sister Ethel Johnson and their mother resided. (T2, 251–56). The police eventually recovered a rifle hidden in a wall panel behind the shower stall located in bathroom of the Johnson residence at 172 Reed Street. (T2, 191). Michael Mellody, a ballistics technician with the Erie County Department of Central Police Services, Forensic Laboratory, testified that ballistics tests performed on that weapon indicated that it was the same rifle from which the bullet that killed Mrs. Hansen was fired. (T2, 275).

Petitioner and Gerald Johnson were arrested on March 23, 1979 and taken to Buffalo Police Headquarters where each gave a statement pertaining to their involvement in Mrs. Hansen's murder. Before Gerald gave his statement, he asked to speak with Petitioner. (T2, 53, 66). Gerald reportedly asked Petitioner if he should tell the truth and Petitioner responded that he should. (T2, 66). Those statements were read into the record at trial. (T2, 101–113, 179–87). The statements were determined to be voluntary at a **Huntley** hearing held on November 19, 1979.

Richard K. Stevens testified at trial that Petitioner had confessed to him while both were being held at the Erie County Holding Center on unrelated charges that Petitioner was the one who shot Mrs. Hansen while he and Gerald Johnson burglarized her apartment and that they intended to pin the blame on Adams. (T2, 400–405, 438–41).

While deliberating, the jury submitted a note to Justice Marshall requesting a portion of Ms. Fields's testimony be read back. As Petitioner's attorney could not be located, Justice Marshall temporarily appointed co-Defendant's attorney, Mr. Kubiniec, to jointly represent both Petitioner and co-Defendant for purposes of the read back.[9]

### DISCUSSION

Petitioner asserts as grounds for habeas relief that his constitutional rights under the Sixth Amendment were violated when he was denied his right to confrontation and to legal representation. Respondent maintains that Petitioner has failed to exhaust state remedies as to both his claims and, in any event, the alleged constitutional deprivations constitute harmless error not warranting habeas relief.

 In reviewing a state prisoner's petition pursuant to 28 U.S.C. § 2254, a district court makes an independent determination as to whether the petitioner is in custody in violation of his rights under the Constitution or any laws or treaties of the United States. *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), *reh'g denied,* 501 U.S. 1277, 112 S.Ct. 27, 115 L.Ed.2d 1109 (1991). A state petitioner's federal habeas corpus petition may be dismissed if the petitioner has not exhausted available state remedies as to any of his federal claims, *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), although under the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(b)(2), a federal court is permitted to deny a state prisoner's habeas corpus

**9.** The record does not reveal why Mr. Owens was unavailable at this time.

petition on the merits even though the prisoner has not exhausted available state remedies.

■ In reviewing habeas petitions, federal courts do not function as appellate courts to review matters within the jurisdiction of the state, or to review rulings and decisions of state trial and appellate courts, rather, the court determines whether the proceedings in the state court amount to a violation of federal constitutional rights. *Coleman, supra.* Federal review of a state court conviction is limited to errors of federal constitutional magnitude which denied a criminal defendant the right to a fundamentally fair trial. *Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). A state prisoner applying for a writ of habeas corpus under 28 U.S.C. § 2254 is not entitled to an evidentiary hearing by the federal court, but the granting of a hearing is within the discretion of the federal district court. *Keeney v. Tamayo–Reyes,* 504 U.S. 1, 4–5, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992) (citing *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)). The state court's determination, however, is presumed to be correct unless one of the specified conditions pursuant to 28 U.S.C. § 2254(e), formerly 28 U.S.C. § 2254(d), is found to exist or unless the federal habeas court concludes that the relevant state court determination is not fairly supported by the record. *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). Absent these factors, the burden rests on the petitioner to establish, by clear and convincing evidence, that the factual determination is erroneous. *Sumner, supra.*

■ It is within the court's discretion whether an evidentiary hearing is necessary. *Pagan v. Keane,* 984 F.2d 61, 63 (2d Cir.1993). The court is in possession of the complete state record, including the motion, hearings and trial transcripts as well as the briefs filed in connection with Petitioner's direct appeal to the Appellate Division and his petition for writ of error *coram nobis.* Petitioner has not requested that the court conduct an evidentiary hearing prior to resolving his claims for relief and has not challenged the record below as factually inadequate. Accordingly, the court in its discretion finds an evidentiary hearing unnecessary.

### 1. Sixth Amendment Right to Confrontation

Petitioner asserts as his first ground for relief that he was denied his Sixth Amendment right to confrontation when an interlocking statement of confession made by his brother Gerald, a non-testifying co-defendant, was admitted into evidence at their joint trial. Petition, ¶ 24. According to Respondent, Petitioner has failed to exhaust this claim as his challenge on direct appeal was restricted to whether his rights pursuant to New York Criminal Procedure Law § 710.70 to have the jury determine whether his own statement of confession was voluntarily made was impaired by the admission of co-Defendant's statement of confession.[10] Answer, ¶¶ 10–13; Respondent's Memorandum at 4. Respondent further maintains that by failing to raise the instant issue on direct appeal, the subsequent motion to vacate the judgment of conviction pursuant to New York Criminal Procedure Law § 440.10 on that issue was

---

**10.** Specifically, § 710.70 provides in relevant part that:

Nothing contained in this article ... precludes a defendant from attempting to establish at a trial that evidence introduced by the people of a pre-trial statement made by him should be disregarded by the jury or other trier of the facts on the ground that such statement was involuntarily made.... Even though the issue of the admissibility of such evidence ... was determined ad-

versely to the defendant upon motion, the defendant may adduce trial evidence and otherwise contend that the statement was involuntarily made. In the case of a jury trial, the court must submit such issue to the jury under instructions to disregard such evidence upon finding that the statement was involuntarily made.

N.Y.Crim.Proc.Law § 710.70 (McKinney 1995).

insufficient to meet the exhaustion requirement. Respondent's Memorandum at 6–8. Before the court can determine whether this claim is exhausted, it is necessary to review the law regarding the admissibility of so-called interlocking statements at a joint trial both at the time of Petitioner's trial and when he moved to vacate the judgment.

■ It is fundamental that the admission at trial of a statement made by a non-testifying co-defendant as evidence against a defendant is a violation of the Sixth Amendment right to confrontation as the Sixth Amendment Confrontation Clause guarantees a criminal defendant the right to cross-examine witnesses presented against him. *United States v. Kyles*, 40 F.3d 519, 526 (2d Cir.1994) (citing *Pointer v. Texas*, 380 U.S. 400, 406–407, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)), *cert. denied*, 514 U.S. 1044, 115 S.Ct. 1419, 131 L.Ed.2d 302 (1995). "The right to confront and to cross examine witnesses is primarily a functional right that promotes reliability in criminal trials." *Lee v. Illinois*, 476 U.S. 530, 539, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986). When the witness is an accomplice whose testimony may implicate the defendant in the crime for which defendant is accused, the defendant has a heightened interest in cross examining the witness. *Kyles, supra*, at 526.

At the time of Petitioner's joint trial by jury in 1980, the admissibility of interlocking statements made by a non-testifying co-defendant at a joint trial was determined pursuant to *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Under *Bruton*, a defendant is deprived of his Sixth Amendment constitutional right to confrontation when a non-testifying co-defendant's confession which also implicates the defendant is introduced at their joint trial despite a jury instruction that the confession is to be considered only against the co-defendant.

Such confessions are hearsay, the credibility of which is considered inevitably suspect based on the co-defendant's strong motivation to implicate the defendant and exonerate himself, and their unreliability is compounded by the co-defendant's failure to testify and thus not subject to cross-examination. *Bruton*, at 141–42, 88 S.Ct. 1620.

Subsequently, in *Parker v. Randolph*, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979), an exception to *Bruton* was created permitting the introduction of a non-testifying co-defendant's statement provided such statement was not "devastating" to the defendant's case with proper limiting instructions that the confession be considered only as against the statement's declarant. *Parker, supra*, at 75 and n. 7, 99 S.Ct. 2132. Similar statements by a defendant and non-testifying co-defendant are commonly referred to as "interlocking statements." *Parker, supra*, at 75, 99 S.Ct. 2132. An interlocking statement is not considered devastating, and thus inadmissible, if it was essentially the same as the defendant's own statement. *Id.*

Accordingly, as of the date of Petitioner's conviction and direct appeal, Gerald Johnson's confession was admissible at his joint trial with Petitioner as an interlocking statement. *See Parker, supra*, at 75, 99 S.Ct. 2132. Petitioner did not argue otherwise on direct appeal. Rather, Petitioner's argument on appeal was that the admission of co-defendant Gerald Johnson's interlocking statement of confession was improper, as a confrontation clause violation, where Petitioner, pursuant to New York Criminal Procedure Law § 710.70 had argued as part of his defense that Petitioner's own statement of confession was involuntary. Specifically, Petitioner maintained that severance of his trial from his co-defendant's trial was necessary to preserve his statutory right under § 710.70.[11] In its decision affirming Petitioner's conviction, the Appellate Divi-

---

11. The record indicates that the jury was instructed to consider whether the interlocking statements of confession were voluntarily made, (T2, 712–13), and Petitioner does not contend otherwise.

sion found the confessions of Petitioner and Gerald Johnson were "so substantially similar" that the "interlocking confession" exception to *Bruton, supra,* applied, and rejected Petitioner's argument that the exception was inapplicable where the voluntariness of the statement was challenged at trial. *People v. Johnson,* 115 A.D.2d 316, 496 N.Y.S.2d 177, 178 (1985).

However, in *Cruz v. New York,* 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987), decided after Petitioner's conviction became final, the Supreme Court held that introduction of interlocking statements at a joint trial of a defendant's own incriminating statement violates the Confrontation Clause even though the jury was instructed not to consider a co-defendant's confession against the defendant and defendant's own confession was admitted against him. In particular, even where a defendant's and co-defendant's confessions "interlock," such interlocking "bears a positively inverse relationship to devastation [to the defense resulting from such statements]," particularly where the defendant seeks at trial to avoid the adverse effect of his earlier statement. *Cruz, supra,* at 192, 107 S.Ct. 1714. Otherwise, if the co-defendant's statement greatly diverges from the defendant's statement, or if the defendant stands by his earlier statement which is largely corroborated by the co-defendant's statement, the admission of such statement is relatively harmless. *Id.* At trial, although Petitioner did not testify, he attacked the voluntariness of his statement through cross examination. (T1, 136–39, 142–43).

Accordingly, Petitioner relied on *Cruz* in support of his motion to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10, contending that *Cruz* created a retroactive change in the law. Although that issue was not decided in New York until 1995 when the New York Court of Appeals held *Cruz* retroactively applicable on collateral review of an earlier conviction, *People v. Eastman,* 85 N.Y.2d 265, 624 N.Y.S.2d 83, 648 N.E.2d 459 (1995), the Second Circuit had decided in 1991 *Cruz* was retroactively applicable on collateral review. *Graham v. Hoke,* 946 F.2d 982, 992–94 (2d Cir.1991) (holding *Cruz* decision that confession of non-testifying co-defendant that would not be directly admissible against defendant may not be admitted at their joint trial applied retroactively on collateral review of conviction which was already final on date *Cruz* was decided), *cert. denied,* 502 U.S. 1039, 112 S.Ct. 890, 116 L.Ed.2d 793 (1992).

■ As stated, Respondent maintains that Petitioner has never properly presented his *Bruton* violation claim to the Appellate Division and, as such, the claim has not been exhausted for purposes of federal habeas relief. Respondent's Memorandum at 4–8. Respondent further argues that the Appellate Division's reference, in its affirmance of Petitioner's conviction, to Gerald Johnson's confession as "substantially similar" to Petitioner's confession, thus admissible as an interlocking confession, under pre-*Cruz* law, was only "dicta" intended to "set the stage" to reject Petitioner's argument regarding the voluntariness issue presented by Petitioner. Respondent's Memorandum at 7 (citing *People v. Johnson,* 115 A.D.2d 316, 496 N.Y.S.2d 177, 178 (1985)).

Petitioner does not deny that he did not raise on direct appeal the issue of whether his Sixth Amendment right, pre-*Cruz,* to confrontation was violated; rather, Petitioner maintains the issued was presented on direct appeal by the respondent. Petition, ¶ 11 (citing Exhibit C). In opposition to Petitioner's motion to vacate pursuant to § 440.10, Respondent asserted that Petitioner never properly raised the confrontation issue on his direct appeal.[12] How-

---

12. In relevant part, § 440.10 provides that:

2.... the court must deny a motion to vacate a judgment when:

... (a) The ground or issue raised upon the motion was previously determined on the merits upon an appeal from the judgment, unless since the time of such appellate de-

ever, regardless of whether Petitioner presented the issue to the Appellate Division on direct appeal or in his § 440.10 motion, a careful reading of the Appellate Division's decision affirming Petitioner's conviction reveals that the issue is exhausted.

The exhaustion requirement "is grounded in principles of comity and reflects a desire to 'protect the state courts' role in the enforcement of federal law.'" *Castille v. Peoples,* 489 U.S. 346, 349, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989) (citing *Rose v. Lundy, supra,* at 518, 102 S.Ct. 1198). As the Appellate Division considered, albeit based on the state court holding in *Eastman,* the confrontation issue on both direct appeal and later in connection with Petitioner's § 440.10 motion, that court considered the issue and thus the state court was presented with the opportunity to address Petitioner's instant claim. Accordingly, the court finds the claim exhausted for federal habeas purposes.

Even if technically unexhausted on direct appeal, Petitioner's claim is a direct attack on his conviction based on *Cruz* and as a properly asserted retroactively applied constitutional claim previously presented to the state court on Petitioner's § 440.10 motion, this court has habeas jurisdiction. *Graham, supra,* at 986–87 (considering that although issue of interlocking confessions was presented on direct appeal in the context of a challenge to the trial court's refusal to sever co-defendants' trial, which occurred prior to *Cruz* decision, issue of *Cruz* violation was nevertheless exhausted for purpose of federal habeas review when it was presented to Appellate Division in a § 440.10 motion filed after *Cruz* was decided). Turning to the merits, the court finds that although the admission of Gerald Johnson's confession at Petitioner's joint trial presents a *prima facie* Sixth Amendment violation, such violation constituted harmless error not warranting a new trial.

In both *Cruz* and *Bruton,* the Supreme Court acknowledged that the admission of an inculpating statement by a non-testifying co-defendant will not always rise to a violation of the Confrontation Clause. For example, in *Cruz,* the Court stated that "[a] codefendant's confession will be relatively harmless if the incriminating story it tells is different from that which the defendant himself is alleged to have told, but enormously damaging if it confirms, in all essential respects, the defendant's alleged confession, it might be otherwise if the defendant were standing by his confession, in which case it could be said that the codefendant's confession does no more than support the defendant's very own case." *Cruz, supra,* at 191, 107 S.Ct. 1714. Additionally, in *Bruton,* the Court acknowledged that "[n]ot every admission of inadmissible hearsay or other evidence can be considered reversible error unavoidable through limiting instructions; instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently. 'A defendant is entitled to a fair trial but not a perfect one.'" *Bruton, supra,* at 135, 88 S.Ct. 1620 (quoting *Lutwak v. United States,* 344 U.S. 604, 619, 73 S.Ct. 481, 97 L.Ed. 593 (1953)).

 Even where a potential confrontation clause violation arises, it may be avoided by redacting the proffered statement of a co-defendant so that it no longer connects the non-declarant defendant to the crimes charged. *United States v. Kyles,* 40 F.3d 519, 526 (citing *United States v. Tutino,* 883 F.2d 1125, 1135 (2d Cir.1989), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990)), *cert. denied,* 514 U.S. 1044, 115 S.Ct. 1419, 131 L.Ed.2d 302 (1995). Nor is reversal mandated based on a facial violation of the Sixth Amendment right to confrontation where "'the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is

termination there has been a retroactive change in the law controlling such issue.

N.Y.Crim.Proc.Law § 440.10(2)(a) (McKinney 1994).

so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error.'" *Kyles, supra,* at 526–27 (quoting *Schneble v. Florida,* 405 U.S. 427, 430, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972)). Accordingly, such error is trial error subject to harmless error review. *Yarborough v. Keane,* 101 F.3d 894, 898 (2d Cir. 1996) (citing *Arizona v. Fulminante,* 499 U.S. 279, 307, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)), *cert. denied,* 520 U.S. 1217, 117 S.Ct. 1706, 137 L.Ed.2d 831 (1997); *Kyles, supra,* at 526–27. The test for harmless error in the context of habeas review is "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson,* 507 U.S. 619, 637–38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). In such cases, "there is no reasonable probability that the *Bruton* violation infected the verdict." *Kyles,* at 527.

■ In this case, the record demonstrates sufficient evidence of guilt such that the statements of Gerald Johnson can be found to have had no "substantial and injurious effect or influence in determining the jury verdict." *Brecht, supra,* at 637–78, 113 S.Ct. 1710. Such direct and circumstantial evidence, forensics, admissions and the testimony of third party witnesses strongly supports the jury's finding that Mrs. Hansen was killed during a violent felony in which Petitioner participated. For example, Petitioner's statement that he observed Mrs. Hansen lying on the bathroom floor in her apartment with her face covered in blood and that Adams kicked her in the head is corroborated by forensic evidence that Mrs. Hansen suffered blunt force trauma to the face. (T2, 384).

Significantly, Richard Stevens, who was being held at the Erie County Holding Center at the same time that Petitioner was being held on the charges related to the robbery and death of Mrs. Hansen, testified that Petitioner told him Adams beat Mrs. Hansen in her bathroom. (T2, 440). Stevens further testified that Petitioner told him Mrs. Hansen pleaded for Adams to stop hitting her as her head was "spinning." (T2, 440). It is significant that such statement contains verbiage identical to that contained in Petitioner's statement thus placing Petitioner at the scene and corroborating his own description of the brutal crime.

Additionally, Petitioner's statement that he and Gerald Johnson brought the television to Maggie Fields around 10:30 P.M. on March 20, 1979, intending to sell it to her is consistent with testimony in which Ms. Fields stated that Gerald Johnson brought her a television set and asked her if she wanted to buy it. (T2, 229, 236–37). Petitioner's description of that television squares with the description of the television Gerald Johnson brought to Maggie Fields. (T2, 142–43, 153–54, 229–30). That Fields testified Gerald Johnson was alone when he brought her the television (T2, 228) is also consistent with Petitioner's statement that he did not accompany Gerald inside the house, but waited outside on the street corner.

Further, the rifle used to murder Mrs. Hansen was found by police at 172 Reed Street, the residence of Petitioner's sister Ethel Johnson with whom he was staying at the time of the murder. (T2, 154, 177, 191). Petitioner's statement that he and his brother Gerald initially brought the television to 759 Best Street is consistent with testimony by Mabel Hall, John Johnson's girlfriend, who lived at that address, that at 10:30 P.M. on the night of the murder, she observed Petitioner downstairs and Gerald Johnson descending the stairs and calling up to John Johnson to get the gun out of the hallway. (T2, 457). Also, Mabel's testimony that when John Johnson took the gun into Mabel's apartment and unloaded it, a spent shell casing from a fired bullet fell out, (T2, 458–59), is consistent with the statements of both Petitioner and Gerald that each heard Adams

fire only one shot, as well as the fact that Mrs. Hansen died of a single bullet wound to the head, and the record is devoid of reference to or evidence of other shots being fired. (T2, 378–86). Mabel Hall's statement that she threw the spent shell casing in the garbage (T2, 464) confirmed testimony by Buffalo Police Officer Clifford Jones that on March 23, 1979, he found the spent shell casing in a ketchup bottle in a trash can in the upstairs apartment of Mabel Hall. (T2, 349–50). That spent shell casing was later identified as having come from the same weapon used in Mrs. Hansen's murder. (T2, 275).

Finally, Gerald Johnson's statement diverges from Petitioner's statement in several key aspects and is actually less damaging to Petitioner's defense than Petitioner's own statement. While Petitioner, in his statement, admitted that he and his brother stole the television from Mrs. Hansen's apartment, hid it temporarily in the yard of the house located at 759 Best Street and later carried it to Sweeney Street where Gerald attempted to sell it to Maggie Fields, Gerald claimed, in his statement, that Adams stole and temporarily hid the television set and does not mention attempting to sell it to Maggie Fields. In fact, Gerald Johnson's statement that he stole nothing from Mrs. Hansen's house is inconsistent with the testimony by his girlfriend, Cora Lee Hall, that on March 21, 1979, Gerald brought her jewelry that was later determined as stolen from Mrs. Hansen. (T2, 208–210; 213–14). Gerald Johnson's statement also indicates that Adams was armed when they initially entered Mrs. Hansen's apartment, and does not mention leaving and returning with a weapon. Read in relation to these statements, Gerald Johnson's statement is consistent with Steven's testimony that Petitioner and his brother were attempting to pin the murder and robbery on Adams. Accordingly, on this record, Gerald Johnson's statement carries with it substantial indicia of reliability, and did not create a devastating effect of Petitioner's defense.

Therefore, as Gerald's statement does not closely track Petitioner's statement, the court finds no violation of Petitioner's Sixth Amendment right to confrontation. *See Cruz, supra,* at 191, 107 S.Ct. 1714; *Graham, supra,* at 994–97. Further, even if the admission of Gerald Johnson's statement at trial violated the Confrontation Clause, such error was harmless in light of the substantial incriminating physical evidence and that provided by witnesses who testified at trial. Accordingly, this ground provides no basis for granting habeas relief.

## 2. *Sixth Amendment Right to Counsel*

Petitioner asserts as his second basis for habeas relief that he was denied his Sixth Amendment right to counsel when his trial attorney was not present in the courtroom while a portion of the trial testimony was read back to the jurors upon their request. Petition, ¶ 17. Respondent maintains that this ground is not exhausted and, in any event, any such error was harmless. Respondent's Memorandum at 16–18.

Petitioner maintains his Sixth Amendment claim was exhausted when he raised the issue in his motion for a writ of *error coram nobis* alleging ineffective assistance of appellate counsel for failure to raise the issue on appeal. Petition, ¶ 11 and Exhibit C. Respondent argues that while that motion may be sufficient to exhaust the claim of ineffective assistance of appellate counsel, it was insufficient to exhaust the denial of effective assistance of trial counsel claim during a critical stage of the criminal proceedings. Respondent's Memorandum at 16–17. Accordingly, Respondent urges this court dismiss the claim as unexhausted. *Id.*

Petitioner's Sixth Amendment claim was not raised on direct appeal. Rather, it was couched as an ineffective assistance of appellate counsel claim based on the failure

of his appellate counsel to raise it on appeal.[13]

 The *error coram nobis* remedy is available in challenging a criminal conviction where no other statutory remedy is available such as for an ineffective assistance of appellate counsel claim in relation to a New York state conviction. *Garcia v. Keane,* 973 F.Supp. 364, ·369 (S.D.N.Y. 1997); *People v. Vincent,* 50 N.Y.2d 901, 431 N.Y.S.2d 518, 409 N.E.2d 990 (1980). Provided a motion for such relief is timely made, a claim for ineffective assistance of appellate counsel is exhausted for federal habeas purposes even though not presented to the New York Court of Appeals. *Garcia, supra,* at 370; *Meatley v. Artuz,* 886 F.Supp. 1009, 1013 (E.D.N.Y.1995). Accordingly, upon the Appellate Division's denial of Petitioner's *coram nobis* motion on March 17, 1995, Petitioner's state remedies as to his claim for ineffective assistance of appellate counsel were exhausted.

 However, the trial error on which Petitioner's ineffective assistance of appellate counsel claim was predicated, *i.e.,* the denial of effective assistance of trial counsel during a critical stage of the criminal proceeding, was not raised on direct appeal. Moreover, as review of the denial of effective assistance of trial counsel claim is statutorily provided for under New York Criminal Procedure Law § 470.15(1), a writ of *error coram nobis* is not the appropriate remedy for that claim. *Garcia, supra,* at 369; *Vincent, supra,* at 990. Accordingly, Petitioner's claim that he was denied effective assistance of trial counsel is not exhausted.

Further, under New York law an appeal of a trial court's decision must be filed within thirty days of receipt of the trial court's decision, and Petitioner is therefore now barred from raising this ground in another appeal as more than thirty days have passed since receipt of the order denying Petitioner's request to appeal to the New York Court of Appeals.[14] New York Crim.Proc.Law § 460.10(1)(a) (McKinney 1994). As this claim may no longer be raised in the New York courts, Petitioner has procedurally defaulted on it. *Washington v. James,* 996 F.2d 1442, 1447 (2d Cir.1993), *cert. denied,* 510 U.S. 1078, 114 S.Ct. 895, 127 L.Ed.2d 87 (1994). Absent a showing of cause and prejudice for a default, Petitioner is barred from raising this claims on federal habeas review. *Murray v. Carrier,* 477 U.S. 478, 490–91, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Carter v. United States,* 150 F.3d 202, 205 (2d Cir.1998).

 For purposes of testing the availability of federal habeas jurisdiction, "[c]ause" is established by showing "some objective factor external to the defense [which] impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. at 488, 106 S.Ct. 2639. Included among such factors are constitutionally ineffective assistance of counsel, interference by government officials rendering compliance with the state procedural rule impracticable, or situations in which the factual and legal basis for the claim was not reasonably available to counsel at the time of default. *Murray, supra,*

---

**13.** The court observes that Mr. Baumgartner, Petitioner's appellate counsel, prepared and filed the petition for a writ of *error coram nobis* asserting ineffective assistance of appellate counsel.

**14.** Petitioner is not procedurally barred from pursuing his Sixth Amendment denial of effective assistance of trial counsel claims in state court pursuant to New York Criminal Procedure Law § 440.10 which provides that: At any time after the entry of a judgment, the court in which it was entered may,

upon motion of the defendant, vacate such judgment upon the ground that: ... (h) The judgment was obtained in violation of a right of the defendant under the constitution of this state or of the United States." N.Y.Crim.Proc.Law § 440.10(1)(h) (McKinney 1994). Nevertheless, that a state remedy still exists with regard to such claim does not affect the court's finding that Petitioner has failed to exhaust state remedies as to such claims and thus may not consider them in this habeas proceeding.

488. "Prejudice is established by showing that the claimed error worked to [the petitioner's] actual and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). A fundamental miscarriage of justice is established by showing that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent" of the crime for which he has been convicted. *Murray v. Carrier*, 477 U.S. at 496, 106 S.Ct. 2639.

Petitioner asserts no ground for failing to present his claims in state court as he maintains that his unsuccessful petition a writ of *error coram nobis* was sufficient. Petition, ¶ 11. As Petitioner has failed to explain his failure to exhaust his state remedies on this claim, he has failed to demonstrate good cause for the procedural default. This court therefore lacks jurisdiction to consider such grounds.

Nevertheless, Petitioner is *pro se* and the Supreme Court has instructed that pleadings drafted by *pro se* litigants are to be liberally construed than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Accordingly, the court construes Petitioner's petition as seeking habeas relief on the ground that he was denied effective assistance of appellate counsel based on Mr. Baumgartner's failure to assert on direct appeal that Petitioner was denied his Sixth Amendment right to effective assistance of trial counsel when testimony was read back to the jury in the absence of Mr. Owens, an issue which has been exhausted.

 "[T]he right to effective assistance of counsel is not confined to trial, but extends also to the first appeal as of right." *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). A claim for ineffective assistance of appellate counsel is evaluated upon the same standard as is a claim of ineffective assistance of trial counsel. *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir.1994) (citing *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir.1992), *cert. de-*

*nied*, 508 U.S. 912, 113 S.Ct. 2347, 124 L.Ed.2d 256 (1993)); *Abdurrahman v. Henderson*, 897 F.2d 71, 74 (2d Cir.1990). The validity of a habeas petitioner's ineffective assistance of counsel claim is demonstrated by satisfying both elements of the two-part test as stated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Mayo, supra*, at 533. Specifically, a petitioner must demonstrate that "(1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense." *Bunkley v. Meachum*, 68 F.3d 1518, 1521 (2d Cir. 1995) (citing *Strickland, supra*, at 688, 694, 104 S.Ct. 2052). The *Strickland* test also applies where ineffective assistance is claimed based on an action by the court. *See Tyson v. Keane*, 159 F.3d 732, 736 (2d Cir.1998) (denying habeas relief where petitioner claimed Sixth Amendment right to counsel violated by court's refusal to appoint an expert), *cert. denied*, —— U.S. ——, 119 S.Ct. 1270, 143 L.Ed.2d 365 (1999).

 There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, at 689, 104 S.Ct. 2052 (quoting *Michel v. Louisiana*, 350 U.S. 91, 100–101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). As there are "countless ways to provide effective assistance in any given case," consideration of an ineffective assistance of counsel claim requires viewing the reasonableness of the counsel's challenged conduct with respect to the facts of the case as of the time of the counsel's conduct. *Strickland*, at 689–90, 104 S.Ct. 2052.

 Appellate counsel's performance will not be found objectively unreasonable, however, merely because every nonfrivolous argument was not advanced. *Mayo, supra*, at 533. Instead, appellate counsel is expected to focus on key issues

and "winnow[ ] out weaker arguments." *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Appellate counsel's performance may be found constitutionally inadequate upon demonstration that significant and obvious issues were ignored while weaker arguments were pursued. *Mayo, supra.* Further, the degree of prejudice required by *Strickland* will be met upon a showing by the petitioner that absent appellate counsel's deficient representation, there is a reasonable probability that the outcome of an appeal to the state's highest court would have been different. *Mayo, supra,* at 534 (citing *Claudio, supra,* at 803).

Many courts, including the Supreme Court, have interpreted *Strickland* as permitting alleged state court violations, ordinarily required to be raised on direct appeal to the state courts to be preserved for federal habeas review, to be admitted for such review through the "back door" in the context of a claimed denial of effective assistance of appellate counsel. *Kimmelman v. Morrison*, 477 U.S. 365, 378, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (permitting Fourth Amendment issue to be evaluated on habeas review as a Sixth Amendment claim based on appellate counsel's failure to appeal trial court's denial of motion to suppress); *Holman v. Page*, 95 F.3d 481, 482–83 (7th Cir.1996) (same); *Bunkley, supra,* at 1522 (reviewing in the form of an ineffective assistance of appellate counsel claim asserted in habeas petition allegation that appellate counsel failed to raise on direct appeal to the state court that jury was improperly instructed on how to apply state law circumstantial evidence rule); *Durrive v. United States*, 4 F.3d 548, 550 (7th Cir.1993) (observing that in limited circumstances an alleged violation of Fed.R.Crim.P. 32 requiring defendant be provided with copy of presentence report may be subject to federal habeas review in the context of an ineffective assistance of counsel claim). *See also Chestaro v. United States*, 17 F.Supp.2d 242, 244 (S.D.N.Y.1998) (denying habeas relief on the basis that the claim that

defense counsel failed to challenge elements listed in indictment was not raised on direct appeal and could not subsequently be admitted through the back door clothed as an ineffective assistance of counsel claim failed to meet *Strickland v. Washington* requirements because of the novelty of issue).

In *Bunkley, supra,* the court considered on federal habeas review an alleged improper jury charge asserted as an ineffective assistance of appellate counsel claim based on appellate counsel's failure to raise the issue on direct appeal to the state court. The court stated that in such situations, "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." *Bunkley, supra,* at 1522 (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369–70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Accordingly, the court must "examine the fairness and the reliability of the proceeding in terms of the proper application of federal law." *Bunkley, supra,* at 1522. However, the same standard—denial of a fair trial—is applicable to a claimed denial of constitutional right to due process whether asserted as denial of effective assistance of trial or appellate counsel. *Id.* at 1523.

As discussed, as Petitioner's denial of trial counsel claim was not presented on direct appeal to the Appellate Division, the court considers it in the context of Petitioner's ineffective assistance of appellate counsel claim based on the failure to assert the denial of trial counsel claim. As such, Petitioner's claim of ineffective assistance of appellate counsel will be without merit absent a finding that his claim that he was denied effective assistance of trial counsel has merit and meets the requirements of *Strickland v. Washington, i.e.,* that counsel's performance was deficient and that such deficiency prejudiced Petitioner's defense. *Strickland, supra,* at 694, 104 S.Ct. 2052.

In this case, Mr. Baumgartner admitted in his affidavit submitted in support of Petitioner's petition for a writ of *error coram nobis* that he failed to discover upon reviewing the transcript of Petitioner's criminal trial that Mr. Owens was not present in the courtroom while a portion of the trial testimony was read back to the jury upon their request. Affidavit of Richard L. Baumgartner in Support of Writ of *Error Coram Nobis,* Exhibit C to Petition, ¶ 18. Despite Mr. Baumgartner's admitted oversight, the court finds such did not prejudice Petitioner's defense.

The core of Petitioner's argument is that the temporary assignment of his co-defendant's counsel, Richard Kubiniec, to also represent Petitioner during the read back of trial testimony to the jury while Petitioner's own attorney, Mr. Owens, was absent, constituted a violation of his Sixth Amendment right to effective assistance of counsel. The testimony which was both requested and read back to the jury consisted of a portion of Ms. Fields's testimony concerning her receipt of the television from Gerald Johnson. Petitioner maintains that such request presumptively included a request for the accompanying cross examination which allegedly impeached Ms. Fields's testimony. Petition, ¶ 22. According to Petitioner, as Ms. Fields, on the direct examination, only connected co-Defendant to the television and offered no testimony connecting Petitioner to the television, Mr. Kubiniec had a strategic reason for not requesting the cross-examination testimony also be read back as Ms. Fields specifically stated in such testimony that Petitioner was not with Gerald Johnson when he brought her the television set. Petition, ¶ 23.

In *Satterwhite v. Texas,* 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988), the Supreme Court held that a Sixth Amendment violation is not considered to be harmless only where it pervades the entire criminal prosecution as to cast doubt on the fairness of the trial process. *Satterwhite, supra,* at 256, 108 S.Ct. 1792 (citing cases including *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) (conflict of interest in representation throughout entire proceeding); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (total deprivation of counsel throughout entire proceeding); *White v. Maryland,* 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963) (absence of counsel from arraignment proceeding affected entire trial because defenses not asserted were irretrievably lost); and *Hamilton v. Alabama,* 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961) (same)). Accordingly, the Court declined to adopt an automatic reversal rule for Sixth Amendment violations unless the deprivation of right to counsel affected and contaminated the entire criminal proceedings. *Satterwhite, supra,* at 257, 108 S.Ct. 1792. Otherwise, such claimed violations are subject to harmless error analysis. *Id.* at 258, 108 S.Ct. 1792.

In the instant case, the court finds that Petitioner has failed to overcome *Strickland's* "strong presumption" that appellate counsel rendered adequate assistance of counsel despite failing to raise on direct appeal that the joint representation of Petitioner by counsel for co-Defendant while testimony was read back to the jury as such argument, had it been advanced, would have been weak. *Strickland, supra,* at 689, 104 S.Ct. 2052. Specifically, the joint representation issue, which, according to the record, occurred at the end of the trial and lasted no more than three minutes, cannot be said to have affected the entire trial, lasting over eight days, and is thus subject to harmless error treatment.[15] Further, upon analysis for

---

15. Although it is not clear from the record precisely what portion of Ms. Fields's testimony was read back to the jury, Ms. Fields's testimony on direct examination comprises a total of 8½ pages of the trial transcript. (T2, 227–35). The record further indicates that the jury assembled in the courtroom for the read back at 3:00 P.M. on January 14, 1980 and resumed deliberations at 3:03 P.M. that same day. (T2, 726).

harmless error, the court finds that under the circumstances, Petitioner did not suffer a Sixth Amendment violation of such magnitude as to warrant habeas relief.

During deliberations, the jury submitted a note to Justice Marshall requesting a read back of the testimony by Ms. Fields regarding her receipt of the television from Gerald Johnson. (T2, 725–26).[16] Before the testimony was read back, Justice Marshall stated on the record that Petitioner "has consented that Mr. Kubiniec will represent him during the rereading of the testimony, which is apparently less than one page." (T2, 726). Mr. Kubiniec then asked, "You are not going to read the entire testimony, are you?" (T2, 726). Justice Marshall replied, "I am going to comply with their request." (T2, 726). The record fails to show Petitioner did not acquiesce in Justice Marshall's statement.

Significantly, Ms. Fields's testimony on cross examination is not responsive to the jury's request as she does not specify on cross examination when she received the television from Gerald Johnson. (T2, 235–49). Ms. Fields testified on direct examination, rather than on cross examination, that Gerald Johnson was alone when he brought the television to her house. (T2, 228). First, Ms. Fields's testimony does not implicate Petitioner. Therefore, the court's failure to read back Ms. Fields's testimony on cross examination was not prejudicial to Petitioner. Also, even if Ms. Field's testimony on direct examination that Gerald Johnson was alone when he brought the television to Ms. Fields, (T2, at 228), was not included in the portion read back, the failure to have that statement read to the jury was not prejudicial to Petitioner's defense. Petitioner did not defend on the theory that he was not present; rather, Petitioner's defense was primarily based on his assertion that the statement in the confession, in which Peti-

tioner indicated he waited outside on the street corner while Gerald Johnson carried the television into Ms. Fields's house, was signed involuntarily and is therefore not true.

Moreover, whether any part of Ms. Fields's testimony connects Petitioner to the television when it was delivered to her is irrelevant to the jury's determination that Petitioner was guilty of felony murder as the elements of that crime, i.e., the commission of a murder during or in furtherance of the commission of another crime, were complete when Mrs. Hansen was killed in the course of co-Defendants' flight from the burglary of her home. N.Y.Penal Law § 125.25(3) (McKinney 1997) (felony murder is committed when a person, acting alone or in concert with others, commits or attempts to commit certain predicate felonies, including burglary, and "in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant, if there be any, causes the death of a person other than one of the participants."). Whether Petitioner was present when Gerald Johnson presented Mrs. Hansen's television set to Ms. Fields after the burglary was completed is thus irrelevant to Petitioner's guilt on the charge upon which he was ultimately convicted.

Also, it is within the trial judge's broad discretion to determine whether to permit testimony to be read back to the jury and the trial judge does not abuse that discretion by restricting the testimony read back to that which is responsive to the jury's request. *United States v. Salameh*, 152 F.3d 88, 133 (2d Cir.1998). Here, the record shows, (T2, 726), the trial judge had determined to permit the read back only to the extent of Ms. Fields's direct not cross examination testimony. Mr. Owen's absence was, therefore, immaterial as to whether the jury was also read back

---

**16.** Although the trial trial transcript does not specifically state that the testimony the jury requested by read back consisted of testimony by Ms. Fields as to when she received the television from co-Defendant Gerald Johnson, the parties agree that is the pertinent testimony. Petition, ¶ 23; Respondent's Memorandum at 16.

Fields's cross examination. Thus, even if Petitioner's claim is analyzed as asserting that the trial court interfered with Petitioner's Sixth Amendment rights, there is no merit to the claim.

Accordingly, the court finds that Justice Marshall properly restricted the read back of testimony to that which was responsive to the jury's request. *Salameh, supra,* at 133. Further, the failure to expand such the testimony beyond that requested by the jury did not significantly affect the criminal process so as to cast doubt on the fairness of Petitioner's trial. *Satterwhite, supra,* at 256, 108 S.Ct. 1792. Therefore, the failure to raise the issue on direct appeal does not meet the *Strickland* test, *Strickland, supra,* at 689, 104 S.Ct. 2052, and the petition should, on this ground, be DENIED.

### *CONCLUSION*

Based on the foregoing, Petitioner's petition should be DISMISSED. Further, as the court finds there is no substantial question presented for appellate review, a certificate of appealability should not issue. 28 U.S.C. § 2253, as amended by the Antiterrorism and Effective Death Penalty Act of 1996.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Petitioner and the Respondent.

SO ORDERED.