**Glen MULLINGS, Plaintiff-Appellant,**

v.

**Larry R. MEACHUM, Commissioner of Correction, State of Connecticut, Defendant-Appellee.**

**No. 1381, Docket 88-2185.**

United States Court of Appeals, Second Circuit.

Argued July 19, 1988.

Decided Dec. 21, 1988.

See also, 202 Conn. 1, 519 A.2d 58.

Joette Katz, Office of the Chief Public Defender, New Haven, Conn., for plaintiff-appellant.

James Clark, Asst. State Atty., New Haven, Conn., for defendant-appellee.

---

* Honorable Raymond J. Dearie, United States District Court for the Eastern District of New York, sitting by designation.

Before ALTIMARI and MAHONEY, Circuit Judges, and DEARIE, District Judge.*

ALTIMARI, Circuit Judge:

Plaintiff-appellant Glen Mullings appeals from an order of the United States District Court for the District of Connecticut (Ellen B. Burns, J.) dismissing his petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. In his habeas petition, filed in the district court on November 6, 1987, Mullings challenged his Connecticut state court conviction on armed robbery charges. Mullings asserted that he was denied his right to due process under the fifth and fourteenth amendments to the United States Constitution. Specifically, Mullings argued that a jury instruction on the use of circumstantial evidence allowed the jury to convict him using a lesser standard of proof than beyond a reasonable doubt. For the reasons set forth below, we affirm the decision of the district court.

## BACKGROUND

Prior to December 22, 1984, Mullings was employed as an attendant at a New Haven convenience store. Charles Bryant, a witness called by the state, was the store attendant on December 22. Bryant testified at trial that on that night Mullings entered the store and asked whether someone named "Rerun" or the store owners were in. Mullings then went to the counter, displayed a gun to Bryant, and announced, "This is a robbery." He demanded, and was given, money from the cash register and a change box under the counter.

Mullings ordered Bryant not to push the alarm button. He stated that he knew its location, and the "angle of the [surveillance] camera" as well. Mullings then disconnected the camera. Mullings told Bryant he would not hurt him because he committed the robbery to "get back" at the store owners, and he even offered Bryant some of the money. Mullings asked for a

box of Newport cigarettes and then left. Bryant watched as he made his getaway in an old, dark-colored, full-size automobile.

Within two weeks, Mullings returned to the site of the robbery and again was seen by Bryant, this time trying to open a locked door. When Bryant went to investigate, Mullings turned, ran, and then drove off in a dark-colored Cadillac.

On January 14, 1985, Bryant identified Mullings from an array of photographs shown to him by the police. Bryant was "98 percent sure" that Mullings was the robber. Mullings was arrested on March 1, 1985. At the time of his arrest, a package of Newport cigarettes was found in Mullings' 1970 Cadillac automobile. Mullings admitted that he smoked that brand. He also told the police that he had worked at the store and knew the locations of the alarm button and surveillance camera. Mullings was not informed that Bryant was the attendant on the night of the robbery. Nevertheless, he told the police that the store clerk wore glasses and thus could have been mistaken about his identification.

At trial, Mullings offered an alibi defense. Two friends testified that they were with him on the night of the robbery. Mullings also testified on his own behalf. Bryant, however, "positively identified" Mullings as the robber. In the course of charging the jury, the trial court repeatedly stressed that the state had to prove each element of the crime beyond a reasonable doubt. The court also gave instruction on the use of circumstantial evidence, stating that a fact could be inferred when "the inference asked to be drawn is not only logical and reasonable, but it is strong enough so that you could find that it is *more probable than not* that the fact to be inferred is true" (emphasis added).

Mullings was convicted of armed robbery in the first degree and sentenced to a ten-year term of incarceration. Mullings appealed to the Connecticut Supreme Court, asserting, *inter alia,* that the instruction on circumstantial evidence misled the jury to convict him based on a lesser standard of proof than beyond a reasonable doubt.

The conviction was affirmed. Mullings then filed a petition for a writ of habeas corpus in the United States District Court for the District of Connecticut. In a well-reasoned opinion, the district court dismissed the petition.

## DISCUSSION

Mullings contends on this appeal, as he did in the district court, that the state court's instruction on circumstantial evidence may have caused the jury wrongly to interpret and apply "the rule of circumstantial evidence" in a manner that diluted the state's burden of proof. In a criminal prosecution, the state has the burden of proving each element of the crime beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). In this case, the primary issue before the jury was the identity of the robber. In an effort to prove that Mullings was the robber, the state introduced both direct and circumstantial evidence. At the close of trial, the court instructed the jury on the use of circumstantial evidence, and explained the process of drawing inferences, stating:

[A]n inference in circumstantial evidence may be made providing two elements in the rule of circumstantial evidence are satisfied: one, that the fact from which you're asked to draw the inference has itself been proven beyond a reasonable doubt; and two, that the inference asked to be drawn is not only logical and reasonable, but it is strong enough so that you could find that it is *more probable than not* that the fact to be inferred is true (emphasis added).

Since the court did not indicate any difference in the process of inferring ultimate facts, as opposed to subsidiary facts, Mullings contends that the jury was led to believe that it could reach a finding on the ultimate issue of identity by a mere preponderance of the evidence. We agree that when viewed in isolation, the challenged instruction could conceivably lead a jury to apply the wrong standard, and we therefore join the district court in its determination that the charge was inappropriate.

When determining if a constitutional right has been violated, however, a reviewing court should not view a challenged instruction alone. It is a "well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten,* 414 U.S. 141, 146–7, 94 S.Ct. 396, 400–1, 38 L.Ed.2d 368 (1973); *see also Francis v. Franklin,* 471 U.S. 307, 315, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344 (1985); *United States v. Viafara–Rodriguez,* 729 F.2d 912, 914 (2d Cir. 1984). Thus, the issue we must decide is whether a reasonable juror, after hearing the entire charge, would have believed that the state need only show that it was more probable than not that Mullings was the robber. *Cf. Francis,* 471 U.S. at 316, 105 S.Ct. at 1972 (constitutional question is whether reasonable juror could have understood charge to shift burden of persuasion on intent to defendant). We find that the instructions to the jury when viewed in their entirety could not reasonably have altered the state's burden of proof.

■ On at least fourteen occasions, the court informed the jury that it was the state's burden to prove the elements of the crime charged beyond a reasonable doubt. The challenged instruction, in contrast, was given only once, during the court's explanation of general principles applicable in the case. The jury was charged fully and explicitly about each of the elements that the state had to prove, as well as what constituted proof beyond a reasonable doubt. On the critical issue of identity, the court carefully instructed the jury regarding the state's burden. Five times during this explanation, the court restated that identity must be proven beyond a reasonable doubt. In the light of such instruction, a reasonable jury could not have understood the state's burden to be anything other than beyond a reasonable doubt.

## CONCLUSION

Having found Mullings' contention to be without merit, the district court's dismissal of the petition for a writ of habeas corpus is affirmed.