Daryl H. BUNKLEY, Petitioner–
Appellant,

v.

Larry R. MEACHUM, Commissioner of
Correction, State of Connecticut,
Respondent–Appellee.

No. 118, Docket 95–2057.

United States Court of Appeals,
Second Circuit.

Argued Sept. 8, 1995.

Decided Oct. 30, 1995.

William B. Westcott, Legal Intern, Hartford, CT, University of Connecticut School of Law Legal Clinic (Michelle Gouin, Legal Intern, Timothy H. Everett, Esq., of Counsel), for Petitioner–Appellant.

James M. Ralls, Wallingford, CT, Assistant State's Attorney, Appellate Bureau, Office of the Chief State's Attorney, for Respondent–Appellee.

Before: FEINBERG, KEARSE and LEVAL, Circuit Judges.

FEINBERG, Circuit Judge:

Daryl H. Bunkley, a Connecticut state prisoner, appeals from a final judgment of the United States District Court for the District of Connecticut (José A. Cabranes, Circuit Judge, sitting by designation), granting summary judgment to respondent, Larry R. Meachum, Commissioner of Correction for the State of Connecticut, on Bunkley's petition for a writ of habeas corpus. In his petition, Bunkley claimed that his Sixth Amendment right to effective assistance of counsel was violated when his appellate counsel failed to raise an issue on direct appeal to the Connecticut Supreme Court that would most likely have resulted in a reversal and a new trial. For the reasons stated below, we affirm.

## I. Background

In August 1982, after attempting to shoplift some clothes, Bunkley fled the scene of the crime in his automobile. As he was being pursued by police, Bunkley ran through a red light, struck a vehicle as he was passing it, momentarily ran off the road, and then, crossing over the center line, collided head-on with an oncoming vehicle, killing the driver of that vehicle and her two daughters, and seriously injuring her son and his friend. Following a jury trial in Connecticut Superior Court, Bunkley was convicted in May 1984 of three counts of manslaughter in the second degree and two counts of assault in the third degree. In June 1984, he was sentenced to 22 years in prison.

At Bunkley's trial, the judge gave the following instruction on the rule of circumstantial evidence:

Now I wish to instruct you on the rule of circumstantial evidence. Proof beyond a reasonable doubt does not mean that you must have direct evidence supporting a fact. You may apply the rule of circumstantial evidence. This rule involves the offering of evidence of facts from which you are asked to infer the existence of another fact, or set of facts. Such an inference may be made, provided two elements in the application of this rule are

satisfied; first, that the fact from which you are asked to draw the inference has itself been proven beyond a reasonable doubt, and second, that the inference asked to be drawn is not only logical and reasonable, but is strong enough so that you can find that *it is more probable than not that the fact to be inferred is true.* (emphasis added)

Bunkley's counsel made no objection to the instruction at trial.

Prior to the deadline for filing the appellant's brief in Bunkley's direct appeal to the Supreme Court of Connecticut, that court ruled that an almost identical jury instruction given under similar circumstances was reversible error. See *State v. Rodgers,* 198 Conn. 53, 502 A.2d 360 (1985). In Bunkley's appeal, his counsel raised seven assignments of error by the trial court, but none with respect to the circumstantial evidence instruction. In March 1987, Bunkley's conviction was affirmed. See *State v. Bunkley,* 202 Conn. 629, 522 A.2d 795 (1987).

■ In October 1987, Bunkley filed a petition for a writ of habeas corpus in Connecticut Superior Court. He raised three issues directly related to the circumstantial evidence instruction: (1) ineffective assistance of trial counsel for not objecting to the instruction, (2) ineffective assistance of appellate counsel for not raising the issue on direct appeal[1], and (3) violation of Bunkley's due process right to a fair trial. After an evidentiary hearing, the state judge dismissed the petition in May 1990. See *Bunkley v. Warden,* No. CV–87–414, 1990 WL 271053, (Conn.Super. May 30, 1990), 1990 Conn.Super. LEXIS 383 (May 30, 1990).

Bunkley appealed that decision to the Connecticut Supreme Court, pursuing only the claim of ineffective appellate counsel. In June 1992, the judgment of the Superior Court was affirmed. See *Bunkley v. Commissioner of Correction,* 222 Conn. 444, 610 A.2d 598 (1992) (in banc).

In June 1993, Bunkley filed in the federal district court the habeas petition now before us. The sole claim raised was ineffective assistance of appellate counsel for failure to raise the issue of the circumstantial evidence instruction on Bunkley's direct appeal. On cross-motions for summary judgment, Magistrate Judge Joan Glazer Margolis recommended denying Bunkley's motion and granting respondent's. Reviewing the possible effect of the circumstantial evidence instruction on the jury, she determined that Bunkley was not "deprived of any substantive or procedural right to which he is entitled, nor is the result of the conviction or appeal unreliable or unfair." After "a full and *de novo* review of the record," Judge Cabranes approved and adopted the magistrate's recommended ruling.

## II. Discussion

### A. *Connecticut Supreme Court Review of Circumstantial Evidence Instructions*

When reviewing a jury instruction on circumstantial evidence, the Connecticut Supreme Court has stated that "[w]here the principal factual issue is intent, which is characteristically proven by circumstantial evidence; the court's instructions regarding the use of circumstantial evidence as proof of this essential element are subject to close scrutiny." *State v. Whelan,* 200 Conn. 743, 757, 513 A.2d 86 (quoting *State v. Farrar,* 7 Conn. App. 149, 155, 508 A.2d 49 (1986)) (citation omitted), cert. denied, 479 U.S. 994, 107 S.Ct. 597, 93 L.Ed.2d 598 (1986). Close scrutiny in this context means that the instruction will be considered in isolation from the rest of the jury charge to determine whether or not the jury was misled as to the state's burden of proof. See *State v. Rodgers,* 198 Conn. 53, 57–59, 502 A.2d 360 (1985); *State v. Robinson,* 204 Conn. 207, 210, 527 A.2d 694 (1987). In *Rodgers* and *Whelan,* the court characterized an instruction almost identical to that given at Bunkley's trial to be reversible error. The error was to allow the jury to use a standard of more probable than not to infer a fact going to the essential element of intent.

---

1. Under the "exceptional circumstances" doctrine of *State v. Evans,* 165 Conn. 61, 327 A.2d 576 (1973), failure to object to the circumstantial evidence charge at trial does not constitute waiver on appeal. See *State v. Whelan,* 200 Conn. 743, 755–56, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S.Ct. 597, 93 L.Ed.2d 598 (1986).

Such an instruction "unconstitutionally diluted the state's burden of proving the essential elements of the crime beyond a reasonable doubt." *Whelan,* 200 Conn. at 755, 513 A.2d 86. *Rodgers* was decided in December 1985, approximately two months before Bunkley's brief on his direct appeal was to be filed; and *Whelan* was decided in August 1986, three months before Bunkley's appeal was argued in the Connecticut Supreme Court.

In *Rodgers* and *Whelan,* the Connecticut Supreme Court did not refer to either the Connecticut constitution or state constitutional cases in discussing the issues posed here. *Whelan* refers to federal constitutional principles such as "the fundamental constitutional right that the state establish [a defendant's] guilt beyond a reasonable doubt," 200 Conn. at 756, 513 A.2d 86 (citing *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)), and an impermissible shifting of the burden of proof on the element of intent, id. (citing *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)). Federal courts "will presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.' " *Coleman v. Thompson,* 501 U.S. 722, 735, 111 S.Ct. 2546, 2557, 115 L.Ed.2d 640 (1991) (quoting *Michigan v. Long,* 463 U.S. 1032, 1040–41, 103 S.Ct. 3469, 3476–77, 77 L.Ed.2d 1201 (1983)). See also *Pinkney v. Keane,* 920 F.2d 1090, 1095 (2d Cir.1990), cert. denied, 501 U.S. 1217, 111 S.Ct. 2824, 115 L.Ed.2d 995 (1991). We therefore presume that the Connecticut Supreme Court interpreted and applied federal law in *Rodgers* and *Whelan.*

The Connecticut Supreme Court's interpretation of federal law in those cases is contrary to the interpretation afforded under similar circumstances by the United States Supreme Court and by this court. The proper application of federal law requires that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973). See also *Francis v. Franklin,* 471 U.S. 307, 315, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344 (1985); *Mullings v. Meachum,* 864 F.2d 13, 16 (2d Cir.1988); *United States v. Viafara–Rodriguez,* 729 F.2d 912, 914 (2d Cir.1984). The ultimate question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp,* 414 U.S. at 147, 94 S.Ct. at 400.

**B.  *Ineffective Assistance of Counsel***

In order to sustain a claim of ineffective assistance of trial counsel it must be shown that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. See *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To establish prejudice "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. This court has adopted the *Strickland* test in assessing claims of ineffective appellate counsel. See *Abdurrahman v. Henderson,* 897 F.2d 71, 74 (2d Cir.1990).

Bunkley argues that but for his counsel's failure to raise the issue of the circumstantial evidence instruction on direct appeal, the Connecticut Supreme Court would almost certainly have set aside his conviction and ordered a new trial. Therefore, the argument goes, Bunkley has established a reasonable probability that the result of his appeal would have been different, and has met the prejudice requirement for ineffective assistance of counsel claims under *Strickland.*[2] See *Mayo v. Henderson,* 13 F.3d 528 (2d Cir.), cert. denied, —— U.S. ——, 115 S.Ct. 81, 130 L.Ed.2d 35 (1994); *Claudio v. Scully,* 982 F.2d 798 (2d Cir.1992), cert. denied, ——

---

**2.**  Because each court that has heard Bunkley's claim has determined that he has failed to meet the prejudice prong of the *Strickland* test, the performance prong has never been addressed. See *Bunkley v. Commissioner of Correction,* 222 Conn. at 447 n. 4, 610 A.2d 598.

U.S. ——, 113 S.Ct. 2347, 124 L.Ed.2d 256 (1993).

■ Although at first blush Bunkley's argument has a formalistic appeal, ultimately it must fail. Connecticut Supreme Court cases reviewing circumstantial evidence jury instructions with "strict scrutiny" are based on an expansive—and, as we have just noted, incorrect—application of federal constitutional protection. A federal habeas court is not bound to give effect to a mistaken interpretation of federal law. As explained below, the Sixth Amendment right to effective assistance of counsel does not guarantee to a habeas petitioner the benefit of an erroneous ruling. See *Lockhart v. Fretwell,* 506 U.S. 364, ——, 113 S.Ct. 838, 843, 122 L.Ed.2d 180 (1993) (a habeas petitioner does not have the right "to have the state court make an error in his favor"); see also *Rose v. Clark,* 478 U.S. 570, 579–82, 106 S.Ct. 3101, 3106–08, 92 L.Ed.2d 460 (1986) (holding that harmless error analysis must be applied to determine whether an otherwise valid conviction should be set aside because of an erroneous jury instruction).

The likelihood of a different outcome of the proceeding in question is not, without further analysis, dispositive in all situations. The Supreme Court pointed out in *Fretwell* that "an analysis focussing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." 506 U.S. at ——, 113 S.Ct. at 842. The petitioner in *Fretwell* claimed ineffectiveness of counsel for failure to raise at his state court sentencing hearing an objection based on federal law which, at the time, was supported by case law of the Court of Appeals for the 8th Circuit. Id. at ——, 113 S.Ct. at 841. By the time the case was heard by a federal habeas court, the 8th Circuit precedent had been overruled. Id. The Supreme Court found that, notwithstanding the probability of a favorable ruling at the sentencing hearing had the objection been raised, petitioner had not shown prejudice because, in light of the reversal of precedent he needed to rely on, he could not show that the proceeding was unfair or its outcome unreliable. Id. at ——, 113 S.Ct. at 843–44.

In this case, as suggested by *Fretwell,* we must examine the fairness and the reliability of the proceeding in terms of the proper application of federal law. Such a proper application does not entitle Bunkley to habeas relief even though on a direct appeal the Connecticut Supreme Court might have granted a new trial through its own erroneous interpretation of the same law. See id. at ——, 113 S.Ct. at 844 ("Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him.").

Bunkley argues that prior holdings of this court establish an outcome determination test for claims of ineffective assistance of appellate counsel. He urges that we should look no further than the reasonable probability of the outcome of his direct appeal in the state court to determine whether he is entitled to habeas relief.

It is true that we have used an "outcome of the appeal" test in the cases Bunkley cites, but with one exception they pre-dated *Fretwell.* Moreover, none of them considered, as *Fretwell* did, a claim that petitioner was entitled to rely on an incorrect application of federal law. Thus, in *Mayo,* the only case decided after *Fretwell,* the overlooked claim concerned a violation of New York's so-called *Rosario* rule of pre-trial disclosure of documents codified in N.Y.Crim.Pro.L. § 240.45(1)(a). 13 F.3d at 530–31. In *Claudio,* the omitted claim concerned whether or not the right to counsel prior to initiation of formal proceedings guaranteed under art. I, § 6 of the New York Constitution encompassed a right to effective assistance of counsel. 982 F.2d at 800–01. Both cases involved an underlying (and overlooked) substantive claim of state law. *Abdurrahman* did involve an omitted federal claim (Fourth Amendment protection against lack of probable cause for search and arrest), but there was no reason to believe that the state appellate court's interpretation of federal law would be incorrect. 897 F.2d at 74.

■ In the *Abdurrahman* situation, as well as where the underlying claim involves only state law, looking to the probable out-

come of the direct appeal in state court will be adequate under federal constitutional law doctrine to preserve confidence in the outcome and protect the defendant from prejudice. There is no reason, of course, to assume that a state court will not properly apply state law or, under normal circumstances, that it will not also properly apply federal law. But the situation here is unusual. Due to the incorrect application of federal law as embodied by the *Rodgers* and *Whelan* cases, it is clear that the state court would not properly apply federal law. Therefore, we must look beyond simply the probable result of Bunkley's appeal had the omitted claim been raised and assess the outcome of Bunkley's appeal had the claim been raised *and* the proper federal standards been applied.

Relying on Justice O'Connor's concurrence in *Fretwell,* Bunkley argues that *Fretwell* only applies in exceptional circumstances, 506 U.S. at ———–———, 113 S.Ct. at 845–46 (O'Connor, J., concurring), and that the omission of a federal law claim on a direct appeal in state court is hardly exceptional. However, even if we assume—without deciding—that *Fretwell* is confined only to exceptional cases, reliance on a state appellate court's obviously erroneous interpretation of federal law suffices to meet that standard.

### C. *Proper Application of Federal Law to Bunkley's Claim*

Having determined that the probable outcome of Bunkley's direct appeal is not per se dispositive and that the Connecticut Supreme Court applies an erroneous interpretation of federal law in review of circumstantial evidence instructions, we now turn to the instruction given at Bunkley's trial. This court in *Mullings* held an almost identical circumstantial evidence instruction to be inappropriate. 864 F.2d at 15. However, we went on to note that the trial judge on "at least fourteen occasions" stated the correct burden of proof, gave the inappropriate charge only once, and emphasized the need for proof beyond a reasonable doubt with respect to each of the elements of the crime charged. Id. at 16. No constitutional right of the petitioner had been violated because, looking at the jury charge as a whole, no reasonable juror would have been misled as to the state's burden of proof. Id.

At Bunkley's trial the inappropriate instruction was given only once, during the general instructions portion of the charge; the correct burden of proof was stated at least 31 times and particularly emphasized in the other general instructions; and detailed instructions including the proper burden of proof were given for the specific elements of the offenses charged. Accordingly, no reasonable juror could have been misled as to the state's proper burden of proof with respect to Bunkley's intent.

Bunkley argues that *Mullings* is distinguishable because the central issue there was identity, not intent. We do not regard the distinction as significant. Each is an essential element. Under the circumstances of this case and applying the appropriate standards of federal law, Bunkley has not shown that the outcome of his appeal in state court would have been different had federal law been applied properly. Therefore, Bunkley has failed to show prejudice under the *Strickland* standard for ineffective assistance of counsel.

One final reason also supports our decision. As the district court noted, if Bunkley had claimed in his federal habeas action ineffectiveness of *trial* counsel for not objecting to the jury instruction (as he did in his state habeas petition) Bunkley would have had to show that the effect of the instruction denied him a fair trial. This would necessarily have involved an examination by the federal district court of the jury charge as a whole. We agree with Judge Cabranes that there is no reason to afford Bunkley a different and more lenient standard because he raises the claim as ineffectiveness of appellate counsel.

We have considered all of Bunkley's other arguments and found them to be without merit. Accordingly, we affirm the judgment of the district court.