Joseph KEARSE, Petitioner,

v.

Hans WALKER, Superintendent
Auburn Correctional Facility,
Respondent.

No. 00–CV–00159(NGG).

United States District Court,
E.D. New York.

Nov. 30, 2000.

Joseph Kearse, Wende Correctional Facility, Alden, NY, pro se.

Eliot Spitzer, Attorney General of State of New York, Bruno V. Gioffre, Jr., Assistant Attorney General, New York City, for Defendant.

## MEMORANDUM AND ORDER

GARAUFIS, District Judge.

*Pro se* petitioner Joseph Kearse seeks a writ of *habeas corpus* to challenge his October 27, 1995 conviction in the New York State Supreme Court, New York County, on charges of Robbery, Unlawful Imprisonment, and Criminal Possession of Stolen Property.

Kearse raises two claims in his petition: that the jury convicted him on the basis of legally insufficient evidence and that he received ineffective assistance of appellate counsel. In opposition to Kearse's petition, Respondent argues that the petition is untimely under the federal habeas corpus statute, that Petitioner's sufficiency of the evidence claim is unpreserved for federal review and that Petitioner was afforded effective assistance of counsel. For the reasons set forth below, I conclude that Kearse's petition is timely, that his legal insufficiency claim is procedurally barred and in any event meritless and that his ineffective assistance claim also lacks merit.

## I. Factual Background

The charges against Kearse stem from the September 9, 1994 robbery of Karl Johnson in Queens, New York. At trial, witnesses for the prosecution testified to the following facts. At approximately 10:30 p.m., a radio dispatcher directed Johnson, a taxi-cab driver for York Car Service, to pick up a couple in the vicinity of 120th Avenue and 153rd Street in Queens and to take them to Jamaica Hospital. Upon arriving in that area, Johnson radioed the dispatcher and was given the exact address of 153–29 120th Avenue. Johnson pulled up to the curb in front of the apartment building at that address and noticed Kearse, dressed in black and with no hair on his face or scalp, sitting on the porch of the house next door. Johnson watched as Kearse rose and approached the front door of the passenger side of the taxi. Johnson asked Kearse whether he had called for a taxi. Kearse responded that he had and then opened the rear passenger-side door and entered the car. (Trial Tr. 337–44.)

Kearse sat on the right side of the back seat of the cab. Johnson, facing him, asked where his companion was. Kearse responded that she was coming out of the house. Kearse asked Johnson for a price, and Johnson radioed the dispatcher. Shortly thereafter, Kearse moved to a position directly behind Johnson, placed his hand around Johnson's throat, and held a black handgun to the back of Johnson's head. Johnson then pulled money from his shirt pocket and said, "take the money and go." Kearse took the money and then again grabbed Johnson around the neck, ordering him to reverse the car. (*Id.* 342–46, 372, 375.)

Kearse directed Johnson to an area about four blocks away, directly in front of Baisley Park. Kearse told Johnson to park on the darker side of the street. Johnson parked the car, and complied with Kearse's instructions to remove the key from the ignition, place it on the dashboard, and lie down on the front seat.

Kearse, still pointing the gun at Johnson, searched his socks and pockets. He then took the keys from the dashboard and walked around to the driver's side of the car. Kearse made Johnson move to the passenger side, then tried to start the car. After starting the car, he told Johnson to run. Johnson and Kearse were in the car together for approximately ten to fifteen minutes. Johnson walked away, called 911 at a nearby pay phone, and described the car and Kearse to the police. (*Id.* 347–55, 376–77, 380–83, 414.)

Several minutes later, Police Officer Robert Spadaccini responded to Johnson's location. After giving an account of the incident to Officer Spadaccini, Johnson canvassed the neighborhood with the police in a marked police van. (*Id.* 354–56, 382–83, 414–15.)

Police Officer John Michaud, assigned to a foot post nearby at 134th Street and Guy R. Brewer Boulevard, received a radio transmission of a man being robbed of his money and his taxi-cab and a description of the taxi. While conducting vehicle checks, Officer Michaud heard another officer yell to Kearse, who was driving a white taxi, to put on his seatbelt. The taxi moved from the right lane to the left lane of traffic, and Officer Michaud stopped the taxi after observing petitioner fumbling with his seatbelt. Officer Michaud was five to ten feet from the taxi when he asked Kearse for his license and registration through the open window. Kearse, wearing white surgical gloves and all black clothing, exited the taxi and started to look for identification. Unable to find any, Kearse again entered the taxi and drove off, swerving through traffic and onto the sidewalk, and finally crashing into a street sign. (*Id.* 463–71.)

Meanwhile, unable to find Kearse, Officer Spadaccini decided to return to the 113th Precinct so that Johnson could fill out a police report. En route to the 113th Precinct, a radio transmission from the foot post at 134th Street and Guy R. Brewer Boulevard indicated that Johnson's taxi had been located. Approaching Guy R. Brewer Boulevard, Officer Spadaccini and Johnson saw the taxi. The owner of a nearby house then informed the officers that a person fitting Kearse's description had jumped out of the taxi and had run across her yard towards the Conduit and Rockaway Boulevard. (*Id.* 356–57, 416–20, 472.)

Officer Spadaccini and Johnson again drove around the neighborhood looking for Kearse. Driving along the Conduit they noticed two males near an empty lot. In response to Officer Spadaccini's questioning, the two males pointed towards a residential area across the Conduit. Officer Spadaccini continued south on 175th Street in that direction, and Johnson pointed out Kearse, who was walking southbound. (*Id.* 357–59, 420–23, 455.)

Johnson was able to see Kearse, who was wearing a black t-shirt that was wet with perspiration, through the windshield as he walked towards the police van. The officers left the van and seized Kearse. Officer Spadaccini put his hands on Kearse's chest and noticed that his heart was beating rapidly. The officers then began searching him. Johnson also exited the van and observed the search because he wanted to be certain that Kearse was, in fact, the perpetrator. The police found Kearse in possession of one ten dollar bill, eight one dollar bills, seven quarters, two dimes, one nickel and two pennies. After Johnson identified Kearse as the perpetrator, the police officers took him into custody. Officer Michaud arrived at the location and identified Kearse as the man who had driven the taxi through the check point. (*Id.* 360, 389–92, 427–28, 445, 452, 472.)

## II. Procedural History

### A. Trial and Sentence

Following his arrest, petitioner was charged with Robbery in the First Degree (N.Y. Penal Law § 160.15[4]), Unlawful Imprisonment in the First Degree (Penal

Law § 135.10), and Criminal Possession of Stolen Property in the Fifth Degree (Penal Law § 165.40) (Queens County Indictment Number 4294/94.) Petitioner was tried before Justice Robert McGann, Supreme Court, Queens County, and a jury. At the conclusion of the trial, he was convicted on all of the charges in the indictment. Kearse was sentenced as a persistent violent felony offender to a concurrent indeterminate prison term of 13 years to life for the robbery conviction, 1½ to 4 years for the stolen property conviction and 1½ to 3 years for the unlawful imprisonment conviction.

### B. State Direct Appeal

In January, 1998, Kearse appealed from the judgment of his conviction to the Appellate Division, Second Department. Petitioner filed a brief alleging that the People failed to prove his guilt beyond a reasonable doubt. (*See* Affidavit of Bruno Gioffre in Opposition to Petitioner's Application for Habeas Corpus ("Gioffre Aff.") Ex. A.) The District Attorney responded to petitioner's brief with a Brief for Respondent. (*See id.* Ex. B.)

In a Decision and Order dated May 11, 1998, the Appellate Division, Second Department unanimously affirmed petitioner's conviction. The Appellate Division held that "[Petitioner's] contention that the evidence was legally insufficient to establish his identity as the perpetrator is unpreserved for appellate review." Addressing the merits of Kearse's claim in the alternative the court further concluded that "the evidence in the light most favorable to the prosecution ... was legally sufficient to establish [petitioner's] guilt beyond a reasonable doubt." *People v. Kearse,* 250 A.D.2d 706, 673 N.Y.S.2d 171 (N.Y.App.Div.1998). Moreover, the Appellate Division found that the verdict of guilt was not against the weight of the evidence. *Id.*

The petitioner then sought leave to appeal to the New York State Court of Appeals. On August 20, 1998, the New York State Court of Appeals denied leave to appeal holding that there was no question of law presented which ought to be reviewed. *People v. Kearse,* 92 N.Y.2d 900, 680 N.Y.S.2d 64, 702 N.E.2d 849 (1998).

### C. State Collateral Proceedings

On July 7, 1999, petitioner brought an application for a writ of error *coram nobis* to the Appellate Division claiming ineffective assistance of appellate counsel. (*See* Gioffre Aff. Ex. E.) The District Attorney responded to petitioner's application with a Memorandum of Law in Opposition. (*See Id.* Ex. F.) On October 18, 1999, the Appellate Division, Second Department denied the application stating, "[t]he [petitioner] has failed to establish that he was denied the effective assistance of appellate counsel." *People v. Kearse,* 265 A.D.2d 504, 696 N.Y.S.2d 854 (N.Y.App.Div.1999).

### III. Discussion

### A. Kearse's Petition Was Timely Filed

■ As indicated above, the New York Court of Appeals denied Kearse's application for leave to appeal on August 20, 1998. Under 28 U.S.C. § 2244(d)(1)(A), Petitioner had one year to file his federal habeas petition. Petitioner did not seek a writ of certiorari from the United States Supreme Court. Thus, the one year limitations period began to run as of November 18, 1998. *See Leslie v. Artuz,* 72 F.Supp.2d 267, 274–75 (S.D.N.Y.1999) ("[T]he one year limitations period only begins to run after expiration of the defendant's time to seek a writ of certiorari from the United States Supreme Court."); *see also Ross v. Artuz,* 150 F.3d 97, 98 (2d Cir.1998) (noting that petitioner's conviction became final for purposes of § 2244(d) "when his time to seek direct review in the United States Supreme Court by writ of certiorari expired"). 219 days later, on July 7, 1999 Petitioner brought an application for a writ of error *coram nobis* to the Appellate Division claiming ineffective assistance of ap-

pellate counsel. The Appellate Division denied Kearse's application on October 18, 1999. Under 28 U.S.C. § 2244(d)(2) the one year limitations period was tolled during the pendency of Kearse's *coram nobis* application. *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir.2000) (holding that the "tolling provision excludes time during which properly filed state relief applications are pending but does not reset the date from which the one-year statute of limitation begins to run"). Therefore, when the Appellate Division denied his *coram nobis* application, Petitioner had 136 days, or until March 13, 2000 to file his petition. Kearse filed his petition on December 28, 1999, well before the expiration of the period of limitations prescribed under the AEDPA.

Respondent contends that because Kearse's sufficiency of evidence claim was exhausted in the state courts on August 20, 1998, the limitations period was not tolled by state collateral attacks with respect to other claims, and thus Petitioner only had until August 20, 1999 to raise this claim in a federal habeas petition. In effect, the State interprets 28 U.S.C. § 2244(d)(2) as operating to suspend the AEDPA's one year limitation period only with respect to the specific claims raised in the petitioner's state post-conviction or other collateral review proceedings. This reasoning is unpersuasive. The Second Circuit has concluded that the AEDPA's one-year limitations period is suspended during the pendency of a New York State prisoner's petition for a writ of error coram nobis. *See Clark v. Stinson*, 214 F.3d 315, 319 (2d Cir.2000). The defects of respondent's argument were thoroughly described, moreover, by Judge McClure in *Blasi v. Attorney General of the Commonwealth of Pennsylvania*, 30 F.Supp.2d 481 (M.D.Pa.1998), in which the Pennsylvania Attorney General sought to impose a construction of 2244(d)(2) similar to the one proposed by respondent here. As discussed at length in *Blasi*, the filing of one federal habeas petition based on issues raised on direct appeal would effectively preclude the filing of a second petition based on issues subsequently raised in collateral or post-conviction proceedings. *Id.* at 485–86. Second, to require a petitioner to seek federal habeas relief during the pendency of a state post-conviction proceeding "would contravene the principle of comity embodied in the exhaustion requirement . . ." *Id.* at 486. Finally, the reference in AEDPA's tolling provision to state collateral review of "the pertinent judgment or claim," § 2244(d)(2), can be read under Pennsylvania law to refer to a post-conviction proceeding attacking the validity of either the specific claim or the underlying conviction. *Id.* This reasoning applies equally to New York State post-conviction proceedings. For the foregoing reasons, this court concludes that Kearse's petition was timely filed under the AEDPA.

### B. Petitioner's Insufficiency of the Evidence Claim Is Procedurally Barred

 "Because of comity and federalism concerns and the requirement that States have the first opportunity to correct their own mistakes, federal habeas courts generally may not review a state court's denial of a state prisoner's federal constitutional claim[s] if the state court's decision rests on a state procedural default that is independent of the federal question and adequate to support the prisoner's continued custody." *Epps v. Comm'r of Correctional Servs.*, 13 F.3d 615, 617 (2d Cir.1994) (citing *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). Procedurally defaulted claims may be reviewed by a federal court, however, if the petitioner can demonstrate "cause for the default and prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546.

■ At the close of testimony, defense counsel stated, "I am going to ask that you dismiss the case based on the fact that the People have not proved their case beyond a reasonable doubt as a matter of law." (Trial Tr. at 544.) In its brief in opposition to Kearse's appeal to the Appellate Division, Second Department the state argued that defense counsel's statement was not sufficiently specific to preserve the issue for appellate review. The Appellate Division agreed, finding the claim unpreserved. *See People v. Kearse,* 250 A.D.2d 706, 673 N.Y.S.2d 171 (N.Y.App.Div.1998). According to the New York Court of Appeals, "even where a motion to dismiss for insufficient evidence was made, the preservation requirement compels that the argument be 'specifically directed' at the alleged error." *People v. Gray,* 86 N.Y.2d 10, 19, 629 N.Y.S.2d 173, 652 N.E.2d 919 (1995) (citing *People v. Cona,* 49 N.Y.2d 26, 33 n. 2, 424 N.Y.S.2d 146, 399 N.E.2d 1167 (1979)).

The Second Circuit has consistently held that application by the courts of New York State of the contemporaneous objection rule, codified at N.Y. CRIM. PROC. L. § 470.05(2), represents an adequate and independent state ground for procedural-bar analysis. *See Bossett v. Walker,* 41 F.3d 825, 829 & n. 2 (2d Cir.1994), *cert. denied,* 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995); *Fernandez v. Leonardo,* 931 F.2d 214, 216 (2d Cir.1991). Since the state appellate court relied on an adequate and independent state ground to reject Petitioner's claim, a federal district court cannot consider it unless Petitioner is able to demonstrate cause for the default and actual prejudice, or else show that a failure to consider his claim would result in a "fundamental miscarriage of justice." *See e.g., Sawyer v. Whitley,* 505 U.S. 333, 339 & n. 6, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992); *Bossett,* 41 F.3d at 829; *Lebron v. Mann,* 40 F.3d 561, 564 (2d Cir.1994). Petitioner has not met either requirement.

■ Even assuming, however, that Petitioner could overcome the procedural bar, his insufficiency claim would fail on the merits. The Appellate Division, having concluded that Petitioner's legal insufficiency claim was procedurally barred, nevertheless found the evidence "legally sufficient to establish the defendant's guilt beyond a reasonable doubt." *People v. Kearse,* 250 A.D.2d 706, 673 N.Y.S.2d 171 (N.Y.App.Div.1998). The U.S. Constitution "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). If called upon to test the state appellate court's conclusion that the requirements of the U.S. Constitution as interpreted by the Supreme Court in *In re Winship* were met, this court would assess the evidence, viewed in the light most favorable to the government and construing all possible inferences in its favor. *See United States v. Salerno,* 868 F.2d 524, 530 (2d Cir.), *cert. denied,* 491 U.S. 907, 109 S.Ct. 3192, 105 L.Ed.2d 700 (1989). This court would also accord a high degree of deference to the trial court's findings of fact, which are presumed to be correct, because "the trier of fact was in the best position to view and assess the credibility of the witnesses and all of the evidence." *Bramble v. Smith,* No. 96 Civ. 5905(JFK), 1998 WL 395265, at *12 (S.D.N.Y.1998) (citing *Bossett v. Walker,* 41 F.3d 825 (2d Cir.), *cert. denied,* 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995)). The standard to be applied is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Petitioner has presented no evidence, and this court has found nothing in its review of the record, to call into doubt the conclusion reached by the Appellate Division. Accordingly, this court could not say that the Appellate Division's determination that the evi-

dence adduced at trial was legally sufficient to establish Petitioner's guilt beyond a reasonable doubt was "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1).

### C. Petitioner's Ineffective Assistance of Appellate Counsel Claim Lacks Merit

■ Petitioner contends that his appellate counsel was deficient for failing to argue that trial counsel was deficient for failing to interview and call numerous witnesses who could have testified concerning the circumstances of Kearse's arrest and the identity of the perpetrator. Kearse specifically refers in his petition to numerous witnesses who could have described a man seen fleeing from the police in Kearse's neighborhood immediately prior to the time of his arrest, others who could testify that they retrieved Petitioner's sister from her home after Kearse had been arrested, and further witnesses who could have testified that they had seen Petitioner leave his home, "passing them as he walked towards a 24 hour grocery store." (See Petitioner's Reply Memo. at 21.) For the reasons set forth below, appellate counsel was not ineffective for failing to argue that trial counsel should have called these or any other witnesses.

■ In order to establish that his appellate counsel's representation was constitutionally inadequate, Kearse must demonstrate both that his counsel's performance was objectively unreasonable under prevailing professional standards at the time and that Kearse was prejudiced by this deficiency. See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Bunkley v. Meachum, 68 F.3d 1518, 1521 (2d Cir.1995). Specifically, Kearse must demonstrate that his appellate counsel ignored issues that were "clearly stronger than those presented." Grady, 931 F.Supp. at 1061 (Gray v. Greer, 800 F.2d 644, 646 (7th Cir.1986)).

The decision by counsel to omit certain claims on appeal plainly does not constitute ineffective assistance. The Supreme Court has noted with respect to appellate counsel that "[f]or judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy." Jones, 463 U.S. at 754, 103 S.Ct. 3308. Indeed, an appeal may be better received if it includes only some of the claims that might have been advanced. See id. at 752, 103 S.Ct. 3308. In order to demonstrate prejudice, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Bunkley, 68 F.3d at 1521 (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052).

This court is required to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Indulging this presumption, this court cannot conclude that appellate counsel ignored issues clearly stronger than those presented on appeal. Appellate counsel chose to argue that the prosecutor failed to prove beyond a reasonable doubt that Petitioner robbed Karl Johnson. Although Petitioner did not ultimately prevail on appeal, this non-frivolous argument was presented in a thoroughly professional manner; and there is no basis for concluding that the argument raised on appeal is in any way weaker than the ineffective assistance of trial counsel argument pressed by Petitioner in the instant proceeding. Without, of course, reaching the merits of an ineffective assistance of trial counsel claim, it is clear from the record that trial counsel vigorously contested the identification of Kearse as the perpetrator. It is also clear that the prosecution's witnesses had ample

opportunity to view the perpetrator prior to Kearse's arrest. Their testimony, if deemed credible by the jury—which was in the best position to assess the witnesses' credibility—provided an adequate basis for its conclusion that Kearse was guilty of the charges brought against him. Under these circumstances, there is no basis for finding fault with trial counsel's professional judgment as to the appropriate trial strategy. Moreover, Petitioner has not proffered and the court cannot find, any basis for concluding that there is a "reasonable probability" that absent appellate counsel's decision not to raise the issues urged by Petitioner here, "the outcome of the proceeding would have been different." *United States v. Vegas,* 27 F.3d 773, 777 (2d Cir.), *cert. denied,* 513 U.S. 911, 115 S.Ct. 284, 130 L.Ed.2d 200 (1994). Thus, Petitioner's ineffective assistance of appellate counsel claim must fail.

For the foregoing reasons, the petition of Joseph Kearse for habeas corpus is DENIED. The Clerk of the Court is directed to close this case.

It is so ordered.