[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 20-14181

_____

PABLO GUZMAN,

Petitioner-Appellant,

*versus*

SECRETARY, DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL OF THE STATE OF FLORIDA,
STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:17-cv-20220-CMA

_____

Before JILL PRYOR, NEWSOM, and GRANT, Circuit Judges.

GRANT, Circuit Judge:

The question here is whether Pablo Guzman was prejudiced when his appellate counsel failed to make a particular argument. But there is a catch: while the neglected argument may have succeeded at the time of his appeal—and even during his state court habeas petition—it fails under current Florida law.

Guzman's counsel may have erred in the past, but that error does not prejudice him in the present—at least not according to *Lockhart v. Fretwell*, 506 U.S. 364 (1993). There, the Supreme Court instructed that when the law has changed in a way to render a legal problem obsolete, prejudice is measured against current law. *See id.* at 371–72. That direction decides this case. We do not need to decide whether Guzman's counsel made an error—though by all accounts, he did. But prejudice review in habeas corpus is dedicated to deciding whether a proceeding was truly unfair or unreliable—so much so that to let the result stand would violate the Constitution. Here, the result for Guzman may have been unlucky, but it was neither unfair nor unreliable because under current Florida law, Guzman got the correct result. We affirm the district court's denial of Guzman's petition.

**I.**

In 2013, Pablo Guzman was tried by a Florida jury. He had been charged with attempted first-degree murder, and the state

court instructed the jury to consider three lesser-included crimes as well: attempted second-degree murder, attempted voluntary manslaughter, and aggravated battery. Ultimately, the jury convicted Guzman of attempted second-degree murder, and he was sentenced to forty years in prison.

Guzman now claims that the jury instructions on attempted voluntary manslaughter were incomplete because they lacked an explanation of "excusable homicide." Under Florida law, a killing qualifies as excusable homicide when it was committed "by accident and misfortune," with "sudden and sufficient provocation," or "upon a sudden combat," without "any dangerous weapon being used." Fla. Stat. § 782.03. When Guzman's counsel asked for an instruction explaining excusable homicide, the prosecution protested that such a theory of the case had not been pursued and could not possibly apply. The court agreed with the prosecution and omitted the instruction.

Here is the problem—the decision should have gone the other way at the time. The Florida Supreme Court had said that a "complete instruction on manslaughter requires an explanation that justifiable and *excusable homicide* are excluded from the crime." *State v. Lucas*, 645 So. 2d 425, 427 (Fla. 1994) (emphasis added). And it did not matter that Guzman was convicted of attempted second-degree murder—not manslaughter. Under *Lucas*, the jury needed to hear the complete instructions on manslaughter, even if the evidence was sufficient for second-degree murder. *See id.* at 426–

4                    Opinion of the Court                    20-14181

27. So at the time of Guzman's trial, Florida law required the missing instruction.

Even so, Guzman's counsel did not raise this missing instruction on direct appeal, and the conviction was affirmed. *Guzman v. State*, 151 So. 3d 1256 (Fla. Dist. Ct. App. 2014) (unpublished table decision). In 2015, Guzman petitioned that same state appellate court for habeas relief based on ineffective assistance of appellate counsel. Among the enumerated errors was failure to appeal the omitted excusable homicide instruction. The appellate court denied the petition without explanation. *Guzman v. State*, 206 So. 3d 712 (Fla. Dist. Ct. App. 2015) (unpublished table decision).

In 2017, Guzman turned to federal court. He filed a habeas petition under 28 U.S.C. § 2254 and raised several grounds for relief, including ineffective assistance of appellate counsel. Before the district court ruled on the petition, Guzman filed another habeas petition in state court—nearly identical to his 2015 petition—which was also denied without explanation. *See Guzman v. State*, 348 So. 3d 505 (Fla. Dist. Ct. App. 2019) (unpublished table decision). That same year, the Florida Supreme Court reaffirmed its *Lucas* line of cases in *State v. Spencer*, 216 So. 3d 481, 485–86 (Fla. 2017).[1]

---

[1] *Spencer* recognized two exceptions to the rule in *Lucas* that the jury must have complete manslaughter instructions, but neither applies to Guzman's case. *See* 216 So. 3d at 485–86.

But *Lucas* did not last much longer. Two years later—before the district court ruled on Guzman's § 2254 petition—the Florida Supreme Court walked back this line of cases in *Knight v. State*, 286 So. 3d 147 (Fla. 2019). Like Guzman, the defendant in *Knight* was convicted of attempted second-degree murder. *Id.* at 148. He argued that the jury instructions for attempted voluntary manslaughter were incorrect, and thus reversible error. *Id.* at 150–51. But this time the court disagreed. Because "there was no error in the jury instruction on *the offense of conviction*"—attempted second-degree murder—nor any claim that the evidence at trial was insufficient to support that conviction, reversal was not required. *Id.* at 151 (emphasis added).

The district court recognized this change in the law and rejected Guzman's *Lucas*-based arguments. "If *Lucas* remained good law," the court conceded, then his claim for ineffective assistance of counsel would have succeeded. But relying on *Lockhart v. Fretwell*, which held that the prejudice step of such a claim turns on current law, the court analyzed Guzman's claim under *Knight* instead. *See Fretwell*, 506 U.S. at 371–72. And based on *Knight*, the court denied Guzman's petition.

When Guzman appealed, we granted him a certificate of appealability on this issue. As stated by Guzman, "the *determinative fact* for this Court to consider is the applicability of *Lockhart v. Fretwell*" to his claim.

## II.

We review a district court's denial of a § 2254 federal habeas petition de novo. *Smith v. Sec'y, Dep't of Corr.*, 572 F.3d 1327, 1332 (11th Cir. 2009).

## III.

The Sixth Amendment guarantees criminal defendants the right to counsel at trial and on direct appeal. *See Strickland v. Washington*, 466 U.S. 668, 685–86 (1984); *United States v. Berger*, 375 F.3d 1223, 1226 (11th Cir. 2004). And "the right to counsel is the right to the *effective* assistance of counsel." *Strickland*, 466 U.S. at 686 (quotation omitted and emphasis added). To show that trial counsel or appellate counsel was constitutionally ineffective, a defendant generally must prove two things: deficient performance by counsel, and prejudice to the defendant. *See id.* at 687; *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001).

We take for granted that Guzman's counsel was likely deficient for failing to raise the excusable homicide instruction. But *Strickland* still requires a conclusion that the petitioner was prejudiced by counsel's deficiency. A typical description of the prejudice inquiry is that a defendant must show "a reasonable probability of a different result in the appeal had the claim been presented in an effective manner." *Butts v. GDCP Warden*, 850 F.3d 1201, 1204 (11th Cir. 2017). The logic of Guzman's prejudice argument flows from this typical standard—he says that if his counsel had challenged the omission of the excusable homicide

20-14181              Opinion of the Court              7

instruction, there is a "strong probability" that his conviction would have been vacated.

But not every case is typical. In *Lockhart v. Fretwell*, the Supreme Court faced the same atypical issue animating this appeal: a change in the law. There, as here, the petitioner claimed that his counsel was ineffective for failing to make an objection (at trial rather than on appeal). *Fretwell*, 506 U.S. at 367. And there, as here, by the time the district court decided his federal habeas case, the legal basis for the objection no longer existed because the necessary precedent had been overruled. *Id*. at 367–68. Relying on the older law, the district court granted habeas relief (and the appellate court affirmed) because the omitted objection would have succeeded had it been made at the time of trial. *Id*.

The Supreme Court reversed, holding that a *Strickland* prejudice analysis "focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." *Id*. at 369. Put another way, even if a defendant can show "a reasonable probability of a different result" without counsel's error, that is not always the end of the matter under *Strickland*. *See id*. at 369–70. "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Id*. at 369 (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986)). Thus, *Strickland* prejudice

also requires that the result of a defendant's proceeding be "unfair or unreliable." *Id.*

In refining the prejudice analysis in this way, the Court emphasized that it was "neither unfair nor unreliable" to evaluate the result of an earlier proceeding through the lens of current law. *Id.* at 371. More specifically, no prejudice exists "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law *entitles* him"—present tense. *Id.* at 372 (emphasis added). So unless the defendant would be entitled to habeas relief under current state law, there is no prejudice.

That case decides this appeal. Under *Fretwell*, current Florida law is the proper basis for the prejudice inquiry. Guzman does not argue that he can show prejudice under current law, so we conclude that the result of his direct appeal is "neither unfair nor unreliable." *Id.* at 371. He has not been deprived of "any substantive or procedural right to which the law entitles him," and so his conviction does not offend the Constitution's guarantee of effective counsel on direct appeal.[2] *Id.* at 372.

Guzman contends that, in spite of the facial similarity between his case and *Fretwell*, the Supreme Court's holding there

---

[2] To be clear, this is no technicality. Guzman was convicted of attempted second-degree murder, and the jury received a correct instruction on second-degree murder.

does not apply to his ineffective assistance claim for three reasons. Each is unpersuasive.

*First*, he argues that *Fretwell* applies only to claims of ineffective assistance of counsel at the trial level—not on appeal. This misses the thrust of *Fretwell*, which is based on the prejudice analysis, not the procedural posture. *Fretwell* does nothing to limit itself to the trial context—no language cabins its reasoning or holding in that way. To the contrary, the *Fretwell* court frequently refers to *Strickland* writ large, and *Strickland*'s analysis applies to both trials and appeals. *See Fretwell*, 506 U.S. at 369–73; *Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009). *Fretwell* must also apply to both.

We are not alone in reading *Fretwell* this way. Several other circuits have already applied that case when evaluating *Strickland* prejudice for an appellate ineffective assistance claim. *See Bunkley v. Meachum*, 68 F.3d 1518, 1521–22 (2d Cir. 1995); *United States v. Baker*, 719 F.3d 313, 321 (4th Cir. 2013); *Schaetzle v. Cockrell*, 343 F.3d 440, 448 (5th Cir. 2003); *Evans v. Hudson*, 575 F.3d 560, 566 & n.2 (6th Cir. 2009). Others have applied it when considering different parts of the *Strickland* analysis or otherwise considering ineffective assistance of appellate counsel claims. *See Shaw v. Wilson*, 721 F.3d 908, 918 (7th Cir. 2013); *Matthews v. Workman*, 577 F.3d 1175, 1195 (10th Cir. 2009); *Becht v. United States*, 403 F.3d 541, 545–46 (8th Cir. 2005). No circuit has limited *Fretwell* to the trial context, and we see no reason to be the first.

*Second*, Guzman emphasizes that in *Fretwell* the repudiated objection had been available for only four years and clearly never should have been. Here, he points out, *Lucas* was good law for almost twenty years, and was less obviously a mistake. But *Fretwell*'s basic logic does not turn on how long a case was good law or the degree of its error. And nothing suggests that the case is limited to its facts.

Guzman argues that Justice O'Connor's *Fretwell* concurrence states otherwise. She said, as he points out, that the case was "unusual." *Fretwell*, 506 U.S. at 373 (O'Connor, J., concurring). But she did not stop there. What she termed "unusual" was the defendant's attempt to rely on an argument that was "wholly meritless under current governing law." *Id.* at 373–74 (O'Connor, J., concurring). So too here.

*Finally*, Guzman tries to persuade us that AEDPA either overruled or modified *Fretwell*. *See generally* Antiterrorism and Effective Death Penalty Act of 1996 § 104(3), 110 Stat. 1214, codified at 28 U.S.C. § 2254(d). AEDPA was enacted in 1996, three years after *Fretwell* was decided, and added a new subsection (d) to the existing § 2254. *Id.*; *see also Fretwell*, 506 U.S. at 364. The new provision tightened a federal court's ability to overturn state convictions:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State

court proceedings unless the adjudication of the claim—

> (1) *resulted* in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) *resulted* in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  According to Guzman, this past-tense language repudiates *Fretwell* and creates a new federal habeas right.  In his view, § 2254(d) requires federal courts reviewing habeas petitions to look to the law at the time of the state decision rather than the law of the present, as *Fretwell* demands.  Section 2254(d)'s past-focused language, he says, shifts the inquiry to the time of the state habeas petition.

But AEDPA offers no new habeas power to the federal courts.  In fact, it restrains their power.  Under § 2254(d)'s text, a writ of habeas corpus "*shall not be granted* with respect to any claim that was adjudicated on the merits in State court proceedings *unless*" it resulted in a decision contrary to clearly established federal law.  28 U.S.C. § 2254(d) (emphasis added).  That provision's only affirmative instruction is that federal courts *cannot* grant habeas corpus except in a few limited circumstances.  What it does *not* say is that habeas *must* be granted—in any circumstance.

The limits AEDPA sets on federal courts considering habeas corpus petitions from state prisoners do not create a new right to grant those petitions by freezing the law at some point in the past.

This conclusion is consistent with how the Supreme Court has described AEDPA. In general, the "federal habeas scheme leaves primary responsibility with the state courts," and § 2254(d) in particular "demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011) (quotations omitted). Against the backdrop of this renewed deference to state courts, § 2254(d) "places new constraints on the power of a federal habeas court"—not new avenues for relief. *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quotation omitted and alteration adopted); *see also Cullen*, 563 U.S. at 181 (noting that AEDPA "sets several limits on the power of a federal court").

What's more, both the Supreme Court and this Court have reaffirmed *Fretwell* post-AEDPA with no mention of overruling or modification. *See, e.g., Lafler v. Cooper*, 566 U.S. 156, 166–67 (2012); *Williams v. Taylor*, 529 U.S. 362, 391–94 (2000); *Allen v. Sec'y, Florida Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). We see no reason to change course. AEDPA's restrictions on prisoners' federal habeas rights do not create an end run around *Fretwell*.

⋆    ⋆    ⋆

*Fretwell* establishes that the result of a defendant's proceeding is neither unfair nor unreliable in the present when current law does not provide the right that the defendant seeks to vindicate. To blind ourselves to current Florida law would grant

Guzman "a windfall to which the law does not entitle him."
*Fretwell*, 506 U.S. at 370.  Because the district court correctly applied
*Fretwell* to this case, we **AFFIRM** the court's denial of his § 2254
petition.